**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:25-CV-20973-LEIBOWITZ/TORRES**

FEDERAL TRADE COMMISSION,

     *Plaintiff*,

v.

CLICK PROFIT, LLC, *et al.*,

     *Defendants*.

_____

**DECLARATION OF WILLIAM HOLTON**

     William Holton, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

     1.     I am a resident of Elyria, Ohio, and I have personal knowledge of the facts and circumstances herein. I am making this declaration in support of my motion to dissolve the *ex parte* Temporary Restraining Order entered against me by the Federal Trade Commission.

     2.     I formed an entity called eCom Direct LLC in October 2018. This entity was dissolved on December 9, 2024. This entity was not part of Click Profit LLC. Rather, this was my personal business entity formed prior to Click Profit. Attached as <u>Exhibit A</u> is a copy of this LLC's records from the State of Wyoming.

     3.     On April 29, 2021, Click Profit LLC was formed in Delaware. Attached as <u>Exhibit B</u> is a copy of the LLC's certification of formation. I was not a member of Click Profit LLC at the time this entity was formed.

     4.     Thereafter, Click Profit LLC was moved to the State of Florida.

5.      From May 5, 2021, to October 17, 2023, I owed a 33.33% interest in Click Profit LLC. Attached as Exhibit C are my K-1 forms confirming my ownership interest.

6.      During my time at Click Profit LLC I managed a warehouse in Elyria, Ohio. Attached as Exhibit D is a copy of the lease dated July 28, 2021.

7.      I used this warehouse to receive, store, and ship products for Click Profit LLC.

8.      My duties for Click Profit LLC were limited to purchasing, receiving, storing, and shipping products to Amazon on behalf of Click Profit LLC's customers. I worked with multiple suppliers, including BFG, Office Supply, Entertainment Earth, and Alex Toys, to procure a variety of products, such as garden supplies and toys.

9.      In connection with these duties, I also purchased warehouse supplies and inventory, and I hired and paid warehouse employees.

10.     I was never involved in any sales, advertising, or marketing aspect of Click Profit LLC. My duties were limited to operating and managing the warehouse. As such, I never interacted with Click Profit LLC's customers or made representations to them. My point of contact at Click Profit LLC was its CEO Craig Emslie, who provided me with instructions concerning where to ship products on behalf of Click Profit LLC's customers.

11.     I did not create any of the marketing materials, nor did I make promises to customers about how their stores would perform. I have not seen the websites, pitch decks, "Portfolio Launch", or other advertising and marketing materials.

12.     I also never interacted with the other Defendants, such as Jason Masri, in performing my duties as warehouse manager for Click Profit LLC. Upon information and belief, Masri owns a warehouse in Florida, which operates independently from mine.

13.     I also never opened or managed an Amazon seller account on behalf of any Click Profit LLC customer. Natasha Bell, an employee of Click Profit LLC, was responsible for opening their Amazon seller accounts. This is corroborated by the FTC's Exhibit PX5 (Declaration of David Blevins, Dkt. 5-10 ¶¶10, 18). An employee named Jeff was then responsible for managing the accounts. This is corroborated by the FTC's Exhibit PX5 (Declaration of David Blevins, *Id.* ¶¶21-29) and Exhibit PX6 (Declaration of Patricia Gase, Dkt. 5-11, ¶6).

14.     I had joined Click Profit LLC because of my background in e-commerce and logistics. I had previously operated my own business, eCom Direct LLC, which was independent of Click Profit. My company eCom Direct LLC had successfully run Amazon stores and developed e-commerce tools, including a piece of software called ConnectOrange, which facilitated drop shipping. It is because of my expertise in logistics and warehouse management that Craig Emslie and Patrick McGeoghan, the founders of Click Profit LLC, reached out to involve me with their business.

15.     However, in 2023, Amazon began aggressively suspending stores as part of Section 3 violations, which concerns "linked" accounts. When Amazon detects multiple accounts operating under a similar business structure, it often suspends them to prevent fraudulent activity. Attached as Exhibit E is a copy of a letter from Congressman Christopher Smith to Amazon, detailing Amazon's practice of closing customer stores.

16.     Once Amazon flagged the interconnected nature of the Click Profit-affiliated stores, it suspended all linked accounts, preventing any further sales. Customers who had invested money into these stores suddenly found their stores suspended, without access to their accounts, earnings, or inventory.

17.     Because of this, I decided to terminate my relationship with Click Profit LLC.

18.     On October 17, 2023, I entered into a separation agreement with Click Profit LLC, whereby I agreed to divest my one-third interest in Click Profit LLC in exchange for $230,000 paid out over five installments. Attached as Exhibit F is a copy of this separation agreement. The first $160,000 was paid out almost immediately, and I received installments of $17,500 each on December 1, 2023, April 24, 2024, May 13, 2024, and July 11, 2024. Attached as Exhibit G are copies of the Florida annual reports for Click Profit, which demonstrate that for 2024 and 2025 I was no longer listed as a manager or member.

19.     However, Amazon's policy on accounts suspended due to a Section 3 violation provides that Amazon retains the products for approximately three months and sends them back to the seller. As a result, products that I had shipped to Amazon in large pallets were all sent back to my warehouse after the three-month retention period had passed.

20.     To make matters worse, Amazon shipped these products back in thousands of individual boxes, and it soon became impossible to store all these products in my warehouse, which basically became stacked from floor to ceiling with boxes.

21.     As a result, I agreed to stay on as an independent contractor for Click Profit to wind down the warehouse activities. I was paid approximately $5,000 each month for this help. In total, I received $35,202.33 in 1099 payments between October 26, 2023, and June 10, 2024, in consideration for my work as an independent contractor clearing out the warehouse.

22.     I understand that the FTC has alleged that my company, eCom Direct LLC, received $4,120 in "direct consumer payments." My understanding is that the $4,120 received by eCom Direct LLC through Stripe were related to eCom's own business and were not Click Profit customer funds.

23.     Following my separation from Click Profit LLC, I was purely and exclusively involved with them as an independent contractor tasked with clearing out the warehouse.

24.     My primary focus in the months following my departure from Click Profit LLC was dealing with the logistics of returned inventory. It took me over eight months, between October 2023 and June 2024, to have all products either liquidated or shipped back to Amazon.

25.     By June 2024, I had completely severed ties with, and had stopped any contractor work for the benefit of, Click Profit LLC. My last 1099 payment from the company came on June 10, 2024, and my final buyout installment was issued in July of that year. Once I had cleared out the remaining inventory from the warehouse, I parted ways with the company entirely.

26.     In total, I received the following payments from Click Profits from 2021 through 2024. As a one-third owner of Click Profit until October 17, 2023, I received approximately $395,271.84 in distributions. As an employee of Click Profit during this same period I received W-2 earnings of $57,664.57. I received $35,292.33 as an independent contractor to wind down the warehouse. Finally, I received a buy-out payment for my interest in Click Profit of $230,000.

27.     The above monies were sometimes paid to me personally and sometimes paid to my business, eCom Direct LLC. There was no "commingling" of assets; these were monies were compensation I earned from my work.

28.     Express eCom was a business entirely separate from Click Direct. This business did not manage or create customers' stores. Rather, this was a business whereby myself and Craig Emslie sold products such as "pimple patches," meat slicers and cold plunge tubs. This business lost money and I left the business in February 2025.

29.     The FTC's TRO has frozen all of my assets, putting immense strain on myself financially. After freezing my assets, the FTC has sent to me a draft preliminary injunction that they have encouraged me to sign, which, again, freezes all of my assets obtained prior to the entrance of the preliminary injunction.

30.     I further understand that the FTC has refused to even discuss the release of assets unless I fill out a lengthy financial affidavit concerning assets that are not part of this case.

*William Holton*

William Holton

17/03/2025

Date

# Declaration William Holton

Final Audit Report                                                          2025-03-17

| | |
|---|---|
| Created: | 2025-03-17 |
| By: | Eric Rosen (erosen@dynamisllp.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAbpDaQBOACyMLJnrhFrkCfPkTPx7Crc9M |

## "Declaration William Holton" History

📄 Document created by Eric Rosen (erosen@dynamisllp.com)
2025-03-17 - 8:53:23 PM GMT

📧 Document emailed to William Holton (usndsd@gmail.com) for signature
2025-03-17 - 8:53:27 PM GMT

📄 Email viewed by William Holton (usndsd@gmail.com)
2025-03-17 - 9:12:41 PM GMT

✒️ Document e-signed by William Holton (usndsd@gmail.com)
Signature Date: 2025-03-17 - 9:14:34 PM GMT - Time Source: server

✅ Agreement completed.
2025-03-17 - 9:14:34 PM GMT

Adobe Acrobat Sign

# Exhibit A

## STATE OF WYOMING ✶ SECRETARY OF STATE
## BUSINESS DIVISION

Herschler Bldg East, Ste.100 & 101, Cheyenne, WY 82002-0020

Phone: 307-777-7311 · Website: https://sos.wyo.gov · Email: business@wyo.gov

## Filing Information

 **Please note that this form CANNOT be submitted in place of your Annual Report.**

| | | | |
|---|---|---|---|
| Name | **ECom Direct LLC** | | |
| **Filing ID** | **2018-000825927** | | |
| Type | Limited Liability Company | Status | Inactive - Administratively Dissolved (Tax) |

## General Information

| | | | |
|---|---|---|---|
| Old Name | | Sub Status | Current |
| Fictitious Name | | Standing - Tax | Delinquent |
| | | Standing - RA | Good |
| Sub Type | | Standing - Other | Good |
| Formed in | Wyoming | Filing Date | 10/24/2018 4:07 PM |
| Term of Duration | Perpetual | Delayed Effective Date | |
| | | Inactive Date | 12/09/2024 |

**Principal Address**

411 N. Abbe Rd
Elyria, OH 44035

**Mailing Address**

411 N. Abbe Rd
Elyria, OH 44035

**Registered Agent Address**

Registered Agents Inc
30 N Gould St Ste R
Sheridan, WY 82801

**Parties**

| Type | Name / Organization / Address |
|---|---|
| Organizer | Registered Agents Inc. 30 N Gould St Ste R, Sheridan, WY 82801 |

**Notes**

| Date | Recorded By | Note |
|---|---|---|

# Filing Information

 **Please note that this form CANNOT be submitted in place of your Annual Report.**

| | | | |
|---|---|---|---|
| Name | **ECom Direct LLC** | | |
| **Filing ID** | **2018-000825927** | | |
| Type | Limited Liability Company | Status | Inactive - Administratively Dissolved (Tax) |

## Most Recent Annual Report Information

| | | | | | |
|---|---|---|---|---|---|
| Type | Original | | | AR Year | 2023 |
| License Tax | $60.00 | AR Exempt | N | AR ID | 09054343 |
| AR Date | 9/1/2023 8:44 AM | | | | |
| Web Filed | Y | | | | |

### Officers / Directors

| Type | Name / Organization / Address |
|---|---|

| **Principal Address** | **Mailing Address** |
|---|---|
| 411 N. Abbe Rd | 411 N. Abbe Rd |
| Elyria, OH 44035 | Elyria, OH 44035 |

## Annual Report History

| Num | Status | Date | Year | Tax |
|---|---|---|---|---|
| 05453521 | Original | 01/22/2020 | 2019 | $50.00 |
| Principal Address 1 Changed  From: 11181 Lagrange Rd  To: 411 N. Abbe Rd | | | | |
| 05944608 | Original | 10/06/2020 | 2020 | $50.00 |
| 06819509 | Original | 10/18/2021 | 2021 | $60.00 |
| 07641307 | Original | 09/17/2022 | 2022 | $60.00 |
| 09054343 | Original | 09/01/2023 | 2023 | $60.00 |

## Amendment History

| ID | Description | Date |
|---|---|---|
| 2024-005432343 | Dissolution / Revocation - Tax | 12/09/2024 |
| Filing Status Changed  From: Active  To: Inactive - Administratively Dissolved (Tax) | | |
| Inactive Date Changed  From: No Value  To: 12/09/2024 | | |
| 2024-005307543 | Delinquency Notice - Tax | 10/02/2024 |
| 2024-004858263 | RA Information Change | 06/10/2024 |
| 2021-003435849 | Delinquency Notice - Tax | 10/02/2021 |
| 2020-002949004 | Delinquency Notice - Tax | 10/02/2020 |
| 2020-002739249 | Reinstatement - Tax | 01/22/2020 |
| Filing Status Changed  From: Inactive - Administratively Dissolved (Tax)  To: Active | | |

# Filing Information

 **Please note that this form CANNOT be submitted in place of your Annual Report.**

| Name | **ECom Direct LLC** | | |
|---|---|---|---|
| **Filing ID** | **2018-000825927** | | |
| Type | Limited Liability Company | Status | Inactive - Administratively Dissolved (Tax) |

| | | |
|---|---|---|
| 2019-002707115 | Dissolution / Revocation - Tax | 12/09/2019 |
| | Filing Status Changed  From: Active  To: Inactive - Administratively Dissolved (Tax) | |
| | Inactive Date Changed  From: No Value  To: 12/09/2019 | |
| 2019-002658978 | Delinquency Notice - Tax | 10/02/2019 |
| 2019-002500381 | Address Update | 02/20/2019 |
| | Principal Address 1 Changed  From: 30 N Gould St  To: 11181 Lagrange Rd | |
| | Principal Address 2 Changed  From: Ste R  To: No value | |
| | Principal City Changed  From: Sheridan  To: Elyria | |
| | Principal State Changed  From: WY  To: OH | |
| | Principal Postal Code Changed  From: 82801  To: 44035 | |
| 2018-002456877 | RA Address Change | 12/11/2018 |
| See Filing ID | Initial Filing | 10/24/2018 |

# Exhibit B

Delaware.gov                                                   Governor | General Assembly | Courts | Elected Officials | State Agencies

---

Department of State: Division of Corporations

Allowable Characters

| HOME | | Entity Details |
|------|---|----------------|

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| File Number: | **5879970** | Incorporation Date / Formation Date: | **4/29/2021** (mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | **CLICK PROFIT LLC** | | |
| Entity Kind: | **Limited Liability Company** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| Name: | **RESIDENT AGENTS INC.** | | |
|---|---|---|---|
| Address: | **8 THE GREEN, STE R** | | |
| City: | **DOVER** | County: | **Kent** |
| State: | **DE** | Postal Code: | **19901** |
| Phone: | | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like  ◯ Status  ◯ Status,Tax & History Information

[ Submit ]

[ View Search Results ]          [ New Entity Search ]

---

For help on a particular field click on the Field Tag to take you to the help area.

site map  |  privacy  |  about this site  |  contact us  |  translate  |  delaware.gov

# Exhibit C

**Schedule K-1**
**(Form 1120-S)**
Department of the Treasury
Internal Revenue Service

**2021**

For calendar year 2021, or tax year

beginning 05 / 05 / 2021  ending 12 / 31 / 2021

**Shareholder's Share of Income, Deductions, Credits, etc.**  ▶ See separate instructions.

☐ Final K-1   ☐ Amended K-1   OMB No. 1545-0123

| Part III | Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) 87,973. | 13 | Credits |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | | |
| 4 | Interest income | | |
| 5a | Ordinary dividends | | |
| 5b | Qualified dividends | 14 | Schedule K-3 is attached if checked . . . . . ▶ ☐ |
| 6 | Royalties | 15 A | Alternative minimum tax (AMT) items 0. |
| 7 | Net short-term capital gain (loss) | | |
| 8a | Net long-term capital gain (loss) | | |
| 8b | Collectibles (28%) gain (loss) | | |
| 8c | Unrecaptured section 1250 gain | | |
| 9 | Net section 1231 gain (loss) | 16 D | Items affecting shareholder basis 58,683. |
| 10 | Other income (loss) | | |
| | | 17 V | Other information * STMT |
| 11 | Section 179 deduction | | |
| 12 | Other deductions | | |

**Part I**  Information About the Corporation

**A**  Corporation's employer identification number
█████████

**B**  Corporation's name, address, city, state, and ZIP code
CLICK PROFIT LLC
394 LOWELL STREET SUITE 18
LEXINGTON MA 02420

**C**  IRS Center where corporation filed return
Kansas City, MO  64999-0013

**D**  Corporation's total number of shares
Beginning of tax year . . . . . .
End of tax year . . . . . . .

**Part II**  Information About the Shareholder

**E**  Shareholder's identifying number
█████████

**F**  Shareholder's name, address, city, state, and ZIP code
WILLIAM HOLTON
████████████

**G**  Current year allocation percentage . . .  33.33333 %

**H**  Shareholder's number of shares
Beginning of tax year . . . . . .
End of tax year . . . . . .

**I**  Loans from shareholder
Beginning of tax year . . . . . $
End of tax year . . . . . . . $

For IRS Use Only

| | | |
|---|---|---|
| 18 | ☐ | More than one activity for at-risk purposes* |
| 19 | ☐ | More than one activity for passive activity purposes* |

* See attached statement for additional information.

For Paperwork Reduction Act Notice, see the Instructions for Form 1120-S.   www.irs.gov/Form1120S   REV 02/04/22 PRO   **Schedule K-1 (Form 1120-S) 2021**
BAA

REV 01/29/22 PRO

**Statement A—QBI Pass-through Entity Reporting**

| Corporation's name: CLICK PROFIT LLC | | | Corporation's EIN: ███████ |
|---|---|---|---|
| Shareholder's name: WILLIAM HOLTON | | Shareholder's identifying no: ███████ | |

| Shareholder's share of: | | 1120S, Line 21 | | |
|---|---|---|---|---|
| | | ☐ PTP ☐ Aggregated ☐ SSTB | ☐ PTP ☐ Aggregated ☐ SSTB | ☐ PTP ☐ Aggregated ☐ SSTB |
| **QBI or qualified PTP items subject to shareholder-specific determinations:** | | | | |
| | Ordinary business income (loss) . . . . . . . . . . . . . . . . | 87,973. | | |
| | Rental income (loss) . . . . . . . . . . . . . . . . . . . . . . | | | |
| | Royalty income (loss) . . . . . . . . . . . . . . . . . . . . . | | | |
| | Section 1231 gain (loss) . . . . . . . . . . . . . . . . . . . | | | |
| | Other income (loss) . . . . . . . . . . . . . . . . . . . . . . | | | |
| | Section 179 deduction . . . . . . . . . . . . . . . . . . . . . | | | |
| | Other deductions . . . . . . . . . . . . . . . . . . . . . . . | | | |
| W-2 wages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | |
| UBIA of qualified property . . . . . . . . . . . . . . . . . . . . . . . | | 3,122. | | |
| Section 199A dividends . . . . . . | | | | |

**Statement A—QBI Pass-through Entity Reporting**

| Corporation's name: | | | Corporation's EIN: |
|---|---|---|---|
| Shareholder's name: | | Shareholder's identifying no: | |

| Shareholder's share of: | | | | |
|---|---|---|---|---|
| | | ☐ PTP ☐ Aggregated ☐ SSTB | ☐ PTP ☐ Aggregated ☐ SSTB | ☐ PTP ☐ Aggregated ☐ SSTB |
| **QBI or qualified PTP items subject to shareholder-specific determinations:** | | | | |
| | Ordinary business income (loss) . . . . . . . . . . . . . . . . | | | |
| | Rental income (loss) . . . . . . . . . . . . . . . . . . . . . . | | | |
| | Royalty income (loss) . . . . . . . . . . . . . . . . . . . . . | | | |
| | Section 1231 gain (loss) . . . . . . . . . . . . . . . . . . . | | | |
| | Other income (loss) . . . . . . . . . . . . . . . . . . . . . . | | | |
| | Section 179 deduction . . . . . . . . . . . . . . . . . . . . . | | | |
| | Other deductions . . . . . . . . . . . . . . . . . . . . . . . | | | |
| W-2 wages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | |
| UBIA of qualified property . . . . . . . . . . . . . . . . . . . . . . . | | | | |
| Section 199A dividends . . . . . | | | | |

REV 02/04/22 PRO

March 29, 2023

WILLIAM HOLTON

███████████████

Dear WILLIAM HOLTON,

Enclosed is your 2022 Schedule K-1 (Form 1120S), Shareholder's Share of Income, Credits, Deductions, etc., which has been filed with the 2022 Form 1120S U.S. Income Tax Return for an S Corporation for CLICK PROFIT LLC.

The amounts reported to you on lines 1-17 of the Schedule K-1 (Form 1120S), Shareholder's Share of Income, Credits, Deductions, etc., represent your share of income, credits, deductions, and other information to be reported on the appropriate lines of your tax return.   The IRS uses codes on some lines of the Schedule K-1 to identify the item and provide reporting information. These codes are identified on page 2 of the K-1.

Enclosed is your 2022 Massachusetts Schedule SK-1 (Form 355S), which has been filed with the 2022 Form 355S Massachusetts S Corporation Excise of CLICK PROFIT LLC.

Enclosed is your 2022 Ohio Investor Summary (Form IT 1140), which has been filed with the 2022 Form IT 1140 Ohio Pass-Through Entity and Trust Withholding Tax Return of CLICK PROFIT LLC.

Should you have any questions regarding this information, please do not hesitate to call.

Sincerely,

CLICK PROFIT LLC
394 LOWELL STREET SUITE 18
LEXINGTON, MA 02420

671121

| ☐ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0123 |
|---|---|---|

**Schedule K-1 (Form 1120-S)**
Department of the Treasury
Internal Revenue Service

**20** **22**

For calendar year 2022, or tax year

beginning ____ / ____ / 2022   ending ____ / ____ / ____

**Shareholder's Share of Income, Deductions, Credits, etc.**   See separate instructions.

**Part I   Information About the Corporation**

**A** Corporation's employer identification number

**B** Corporation's name, address, city, state, and ZIP code
CLICK PROFIT LLC

394 LOWELL STREET SUITE 18
LEXINGTON MA 02420

**C** IRS Center where corporation filed return
Kansas City, MO 64999-0013

**D** Corporation's total number of shares
Beginning of tax year . . . . . _____
End of tax year . . . . . . . _____

**Part II   Information About the Shareholder**

**E** Shareholder's identifying number

**F** Shareholder's name, address, city, state, and ZIP code
WILLIAM HOLTON

**G** Current year allocation percentage . . .   33.33333 %

**H** Shareholder's number of shares
Beginning of tax year . . . . . . _____
End of tax year . . . . . . . _____

**I** Loans from shareholder
Beginning of tax year . . . . . $ _____
End of tax year . . . . . $ _____

For IRS Use Only

**Part III   Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items**

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) 265,260. | 13 | Credits |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | | |
| 4 | Interest income 389. | | |
| 5a | Ordinary dividends | | |
| 5b | Qualified dividends | 14 | Schedule K-3 is attached if checked . . . . . ☐ |
| 6 | Royalties | 15 A | Alternative minimum tax (AMT) items 0. |
| 7 | Net short-term capital gain (loss) | | |
| 8a | Net long-term capital gain (loss) | | |
| 8b | Collectibles (28%) gain (loss) | | |
| 8c | Unrecaptured section 1250 gain | | |
| 9 | Net section 1231 gain (loss) | 16 D | Items affecting shareholder basis 160,908. |
| 10 | Other income (loss) | | |
| | | 17 A | Other information 389. |
| 11 | Section 179 deduction | V * | STMT |
| 12 | Other deductions | | |
| 18 | ☐ More than one activity for at-risk purposes* | | |
| 19 | ☐ More than one activity for passive activity purposes* | | |

* See attached statement for additional information.

**Statement A—QBI Pass-through Entity Reporting**

| Corporation's name: CLICK PROFIT LLC | | | Corporation's EIN: ███████ |
|---|---|---|---|
| Shareholder's name: WILLIAM HOLTON | | Shareholder's identifying no: ███████ | |

| | 1120S, Line 21 | | |
|---|---|---|---|
| | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB |
| **Shareholder's share of:** | | | |

| **QBI or qualified PTP items subject to shareholder-specific determinations:** | | | |
|---|---|---|---|
| Ordinary business income (loss) . . . . . . . . . . . . . . . | 265,260. | | |
| Rental income (loss) . . . . . . . . . . . . . . . . . . . . | | | |
| Royalty income (loss) . . . . . . . . . . . . . . . . . . . | | | |
| Section 1231 gain (loss) . . . . . . . . . . . . . . . . . . | | | |
| Other income (loss) . . . . . . . . . . . . . . . . . . . . | | | |
| Section 179 deduction . . . . . . . . . . . . . . . . . . . | | | |
| Other deductions . . . . . . . . . . . . . . . . . . . . . | | | |
| **W-2 wages** . . . . . . . . . . . . . . . . . . . . . . . . | 44,160. | | |
| **UBIA of qualified property** . . . . . . . . . . . . . . . | 21,522. | | |
| **Section 199A dividends** . . . . . | | | |

**Statement A—QBI Pass-through Entity Reporting**

| Corporation's name: | | | Corporation's EIN: |
|---|---|---|---|
| Shareholder's name: | | Shareholder's identifying no: | |

| | | | |
|---|---|---|---|
| | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB |
| **Shareholder's share of:** | | | |

| **QBI or qualified PTP items subject to shareholder-specific determinations:** | | | |
|---|---|---|---|
| Ordinary business income (loss) . . . . . . . . . . . . . . . | | | |
| Rental income (loss) . . . . . . . . . . . . . . . . . . . . | | | |
| Royalty income (loss) . . . . . . . . . . . . . . . . . . . | | | |
| Section 1231 gain (loss) . . . . . . . . . . . . . . . . . . | | | |
| Other income (loss) . . . . . . . . . . . . . . . . . . . . | | | |
| Section 179 deduction . . . . . . . . . . . . . . . . . . . | | | |
| Other deductions . . . . . . . . . . . . . . . . . . . . . | | | |
| **W-2 wages** . . . . . . . . . . . . . . . . . . . . . . . . | | | |
| **UBIA of qualified property** . . . . . . . . . . . . . . . | | | |
| **Section 199A dividends** . . . . . | | | |

REV 03/08/23 PRO

**Form 1120S**

## S Corporation Shareholder Stock and Debt Basis Limitations Worksheet

**2022**

**This worksheet is to assist shareholders in preparing Form 7203 that gets filed at the shareholder level.**

▶ **Note to shareholder:** Keep for your records.
▶ **To activate calculation of this worksheet,** check the Calculate Shareholder Stock and Debt Basis Limitations Worksheet 'Yes Box' on the S Corporation Information Worksheet. . . . . ▶ _____

---

Name of shareholder
WILLIAM HOLTON

Identifying number ▮▮▮▮▮▮

**A** Name of S corporation
CLICK PROFIT LLC

**B** Employer ID number ▮▮▮▮▮▮

**C** Stock block: _____

**D** Check applicable box(es) to indicate how stock was acquired:
- (1) ☐ Original shareholder
- (2) ☐ Purchased
- (3) ☐ Inherited
- (4) ☐ Gift
- (5) ☐ Other: _____

**E** Check if you have a Regulations section 1.1367-1(g) election in effect during the tax year for this S corporation . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

---

| Part I | Shareholder Stock Basis |
|---|---|

| | | | | |
|---|---|---|---|---|
| 1 | Stock basis at the beginning of the corporation's tax year . . . . . . . . . . . | **1** | | 43,935 |
| 2 | Basis from any capital contributions made or additional stock acquired during the tax year . . . . . . . . . . . . . . . . . . . . . . . | **2** | | |
| 3 a | Ordinary business income (enter losses in Part III) . . . . | **3a** | 265,260. | |
| b | Net rental real estate income (enter losses in Part III) . . . | **3b** | | |
| c | Other net rental income (enter losses in Part III) . . . . . | **3c** | | |
| d | Interest income . . . . . . . . . . . . . . . . . . . . . | **3d** | 389. | |
| e | Ordinary dividends . . . . . . . . . . . . . . . . . . . | **3e** | | |
| f | Royalties . . . . . . . . . . . . . . . . . . . . . . . | **3f** | | |
| g | Net capital gains (enter losses in Part III) . . . . . . . . | **3g** | | |
| h | Net section 1231 gain (enter losses in Part III) . . . . . . | **3h** | | |
| i | Other income (enter losses in Part III) . . . . . . . . . | **3i** | | |
| j | Excess depletion adjustment . . . . . . . . . . . . . . | **3j** | | |
| k | Tax-exempt income . . . . . . . . . . . . . . . . . . | **3k** | | |
| l | Recapture of business credits . . . . . . . . . . . . . | **3l** | | |
| m | Other items that increase stock basis . . . . . . . . . . | **3m** | | |
| 4 | Add lines 3a through 3m . . . . . . . . . . . . . . . . . . . . . . . . . . | **4** | | 265,649. |
| 5 | Stock basis before distributions. Add lines 1, 2, and 4 . . . . . . . . . . . . . . . . | **5** | | 309,584. |
| 6 | Distributions (excluding dividend distributions) . . . . . . . . . . . . . . . . . . | **6** | | 160,908. |
| | **Note:** If line 6 is larger than line 5, subtract line 5 from line 6 and report the result as a capital gain on Form 8949 and Schedule D. | | | |
| 7 | Stock basis after distributions. Subtract line 6 from line 5. If the result is zero or less, enter -0-, skip lines 8 through 14, and enter -0- on line 15 . . . . . . . . . | **7** | | 148,676. |
| 8 a | Nondeductible expenses . . . . . . . . . . . . . . . . | **8a** | | |
| b | Depletion for oil and gas . . . . . . . . . . . . . . . | **8b** | | |
| c | Business credits (sections 50(c)(1) and (5)) . . . . . . . . | **8c** | | |
| 9 | Add lines 8a through 8c . . . . . . . . . . . . . . . . . . . . . . . . . . . | **9** | | |
| 10 | Stock basis before loss and deduction items. Subtract line 9 from line 7. If the result is zero or less, enter -0-, skip lines 11 through 14, and enter -0- on line 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **10** | | 148,676. |
| 11 | Allowable loss and deduction items. Enter the amount from line 47, column (c) . . . | **11** | | |
| 12 | Debt basis restoration (see net increase in instructions for line 23) . . . . . . . . . | **12** | | 0. |
| 13 | Other items that decrease stock basis . . . . . . . . . . . . . . . . . . . . | **13** | | |
| 14 | Add lines 11, 12, and 13 . . . . . . . . . . . . . . . . . . . . . . . . . | **14** | | 0. |
| 15 | **Stock basis at the end of the corporation's tax year.** Subtract line 14 from line 10. If the result is zero or less, enter -0- . . . . . . . . . . . . . . . . . . . | **15** | | 148,676. |

**Part II**   Shareholder Debt Basis

### Section A — Amount of Debt (If more than three debts, see instructions.)

| Description | (a) Debt 1 ☐ Formal note ☐ Open account | (b) Debt 2 ☐ Formal note ☐ Open account | (c) Debt 3 ☐ Formal note ☐ Open account | (d) Total |
|---|---|---|---|---|
| **16** Loan balance at the beginning of the corporation's tax year . . . . . . . . . . | | | | |
| **17** Additional loans . . . . . . . . . . . . | | | | |
| **18** Loan balance before repayment. Add lines 16 and 17 . . . . . . . . . . . | | | | |
| **19** Principal portion of debt repayment (this line doesn't include interest) . . . . . . . | | | | |
| **20** Loan balance at the end of the corporation's tax year. Subtract line 19 from line 18 . . . . . . . . . . . | | | | |

**Part II**   Shareholder Debt Basis *(continued)*

### Section B — Adjustments to Debt Basis

| Description | (a) Debt 1 | (b) Debt 2 | (c) Debt 3 | (d) Total |
|---|---|---|---|---|
| **21** Debt basis at the beginning of the corporation's tax year . . . . . . . . . | | | | |
| **22** Enter the amount, if any, from line 17 . . . . | | | | |
| **23** Debt basis restoration . . . . . . . . . | | | | 0. |
| **24** Debt basis before repayment. Add lines 21, 22, and 23 . . . . . . . . | | | | |
| **25** Divide line 24 by line 18 . . . . . . . . | | | | |
| **26** Nontaxable debt repayment. Multiply line 25 by line 19 . . . . . . . . . . | | | | |
| **27** Debt basis before nondeductible expenses and losses. Subtract line 26 from line 24 . . . . . . . . . . | | | | |
| **28** Nondeductible expenses and oil and gas depletion deductions in excess of stock basis . . . . . . . . . . . . . | | | | 0. |
| **29** Debt basis before losses and deductions. Subtract line 28 from line 27. If the result is zero or less, enter -0- . . . . . . . | | | | |
| **30** Allowable losses in excess of stock basis. Enter the amount from line 47, column (d) . | | | | 0. |
| **31** **Debt basis at the end of the corporation's tax year.** Subtract line 30 from line 29. If the result is zero or less, enter -0- . . . . . . | | | | |

### Section C — Gain on Loan Repayment

| Description | (a) Debt 1 | (b) Debt 2 | (c) Debt 3 | (d) Total |
|---|---|---|---|---|
| **32** Repayment. Enter the amount from line 19 . . . . . . . . . . . . . . | | | | |
| **33** Nontaxable repayments. Enter the amount from line 26 . . . . . . . . | | | | |
| **34** **Reportable gain.** Subtract line 33 from line 32 . . . . . . . . . . . . . | | | | |

**Part III**   Shareholder Allowable Loss and Deduction Items

| Description | (a) Current year losses and deductions | (b) Carryover amounts (column (e)) from the previous year | (c) Allowable loss from stock basis | (d) Allowable loss from debt basis | (e) Carryover amounts |
|---|---|---|---|---|---|
| **35** Ordinary business loss . . | | | | | 0. |
| **36** Net rental real estate loss . | | | | | 0. |
| **37** Other net rental loss . . . . | | | | | 0. |
| **38** Net capital loss . . . . . | | | | | 0. |
| **39** Net section 1231 loss . . . | | | | | 0. |
| **40** Other loss . . . . . . . . | | | | | 0. |
| **41** Section 179 deductions . . | | | | | 0. |
| **42** Charitable contributions . . | | | | | 0. |
| **43** Investment interest expense . . . . . . . . | | | | | 0. |
| **44** Section 59(e)(2) expenditures . . . . . . . | | | | | 0. |
| **45** Other deductions . . . . . | | | | | 0. |
| **46** Foreign taxes paid or accrued . . . . . . . . . | | | | | 0. |
| **47** **Total loss.** Add lines 35 through 46 for each column. Enter the total loss in column (c) on line 11 and enter the total loss in column (d) on line 30 . . . . . . . | | | | 0. | 0. |

671121

| ☒ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0123 |

**Schedule K-1 (Form 1120-S)** 2023
Department of the Treasury
Internal Revenue Service

For calendar year 2023, or tax year

beginning / / 2023  ending / /

## Shareholder's Share of Income, Deductions, Credits, etc.
*See separate instructions.*

### Part I — Information About the Corporation

**A** Corporation's employer identification number

**B** Corporation's name, address, city, state, and ZIP code
CLICK PROFIT LLC
394 LOWELL STREET SUITE 18
LEXINGTON MA 02420

**C** IRS Center where corporation filed return
Kansas City, MO  64999-0013

**D** Corporation's total number of shares
Beginning of tax year ... 100
End of tax year ... 100

### Part II — Information About the Shareholder

**E** Shareholder's identifying number

**F** Shareholder's name, address, city, state, and ZIP code
WILLIAM HOLTON

**G** Current year allocation percentage ... 27.21461 %

**H** Shareholder's number of shares
Beginning of tax year ... 33
End of tax year ... 0

**I** Loans from shareholder
Beginning of tax year $
End of tax year $

For IRS Use Only

### Part III — Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items

| Box | Description | Amount |
|---|---|---|
| 1 | Ordinary business income (loss) | 95,694. |
| 2 | Net rental real estate income (loss) | |
| 3 | Other net rental income (loss) | |
| 4 | Interest income | 1,002. |
| 5a | Ordinary dividends | |
| 5b | Qualified dividends | |
| 6 | Royalties | |
| 7 | Net short-term capital gain (loss) | |
| 8a | Net long-term capital gain (loss) | |
| 8b | Collectibles (28%) gain (loss) | |
| 8c | Unrecaptured section 1250 gain | |
| 9 | Net section 1231 gain (loss) | |
| 10 | Other income (loss) | |
| 11 | Section 179 deduction | |
| 12 | Other deductions | |
| 13 | Credits | |
| 14 | Schedule K-3 is attached if checked ☐ | |
| 15 | Alternative minimum tax (AMT) items — A | 0. |
| 16 | Items affecting shareholder basis — C | 171. |
| | D | 106,360. |
| | E | 50,550. |
| 17 | Other information — A | 1,002. |
| | V *STMT | |
| 18 | ☐ More than one activity for at-risk purposes* | |
| 19 | ☐ More than one activity for passive activity purposes* | |

\* See attached statement for additional information.

DO NOT FILE

For Paperwork Reduction Act Notice, see the Instructions for Form 1120-S.  www.irs.gov/Form1120S  REV 06/17/24 PRO  Schedule K-1 (Form 1120-S) 2023
BAA

**Statement A—QBI Pass-through Entity Reporting**

| Corporation's name: CLICK PROFIT LLC | | Corporation's EIN: ▮▮▮▮ | |
|---|---|---|---|
| Shareholder's name: WILLIAM HOLTON | | Shareholder's identifying no: ▮▮▮▮ | |

| | | 1120S, Line 21 | | |
|---|---|---|---|---|
| | | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB |
| Shareholder's share of: | | | | |
| QBI or qualified PTP items subject to shareholder-specific determinations: | | | | |
| | Ordinary business income (loss) . . . . . . . . . . . . . . . | 95,694. | | |
| | Rental income (loss) . . . . . . . . . . . . . . . . . . . . | | | |
| | Royalty income (loss) . . . . . . . . . . . . . . . . . . . | | | |
| | Section 1231 gain (loss) . . . . . . . . . . . . . . . . . . | | | |
| | Other income (loss) . . . . . . . . . . . . . . . . . . . . | | | |
| | Section 179 deduction . . . . . . . . . . . . . . . . . . . | | | |
| | Other deductions . . . . . . . . . . . . . . . . . . . . . | | | |
| W-2 wages . . . . . . . . . . . . . . . . . . . . . . . . . . | | 63,424. | | |
| UBIA of qualified property . . . . . . . . . . . . . . . . . . | | 0. | | |
| Section 199A dividends . . . . . | | | | |

**Statement A—QBI Pass-through Entity Reporting**

| Corporation's name: | | Corporation's EIN: | |
|---|---|---|---|
| Shareholder's name: | | Shareholder's identifying no: | |

| | | | | |
|---|---|---|---|---|
| | | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB | ☐ PTP<br>☐ Aggregated<br>☐ SSTB |
| Shareholder's share of: | | | | |
| QBI or qualified PTP items subject to shareholder-specific determinations: | | | | |
| | Ordinary business income (loss) . . . . . . . . . . . . . . . | | | |
| | Rental income (loss) . . . . . . . . . . . . . . . . . . . . | | | |
| | Royalty income (loss) . . . . . . . . . . . . . . . . . . . | | | |
| | Section 1231 gain (loss) . . . . . . . . . . . . . . . . . . | | | |
| | Other income (loss) . . . . . . . . . . . . . . . . . . . . | | | |
| | Section 179 deduction . . . . . . . . . . . . . . . . . . . | | | |
| | Other deductions . . . . . . . . . . . . . . . . . . . . . | | | |
| W-2 wages . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | |
| UBIA of qualified property . . . . . . . . . . . . . . . . . . | | | | |
| Section 199A dividends . . . . . | | | | |

REV 06/17/24 PRO

# Exhibit D

## LEASE AGREEMENT

This Lease Agreement, this "Lease" or "Agreement", is made and entered into this 28 day of July 2021, by and between Warwick Investments, LLC, an Ohio limited liability company, of P.O. Box 128, Avon Lake, Ohio, 44012, hereinafter "Lessor", and Ecom Direct LLC, an Ohio limited liability company, or 411 Abbe Road N. Elyria, Ohio 44035, hereinafter collectively referred to as "Lessee".

## WITNESSETH:

Whereas, Lessor is the owner of 830 Taylor Street Elyria, Ohio 44039 which consists of an approximate 5490 Sqft of Warehouse Space with Bathrooms. (collectively hereinafter referred to as "the Premises"); and

Whereas, Lessee desires to lease the Premises from Lessor and Lessor desires to lease the Premises to Lessee pursuant to the terms and conditions hereinafter set forth.

**NOW THEREFORE,** in consideration of the foregoing, and in consideration of the mutual promises and covenants hereinafter set forth, the parties agree as follows:

## ARTICLE ONE
## DEMISE, DESCRIPTION AND USE

1.1     Lessor hereby leases the Premises to Lessee and Lessee hereby leases the Premises from Lessor. The Premises is to be used by Lessee for the conduct normal operations of a ecommerce business and for other uses normally incident thereto. The Premises are to be used for no other purpose without the prior written consent of Lessor. Lessee shall not park any vehicles overnight outside the unit that do not have current registration. Lessee shall agree that no overnight stays will be permitted at the property.

1.2     Lessee agrees that no activity will be conducted on or about the Premises which shall generate or involve any "Hazardous Substance", nor shall the Premises be utilized in any manner for the storage of Hazardous Substances, nor shall there be spillage and/or disposal of any Hazardous Substance on or about the Premises, nor shall Lessee cause or permit violation of any "Environmental Law" in connection with its use of the Premises.

1.3     For purposes of this Lease (i) "Hazardous Substances" shall mean any chemical, substance, material, controlled substance, object, condition, waste, living organism or combination thereof that is or may be hazardous to human health or safety or to the environment due to its radioactivity, ignitability, corrosivity, reactivity, explosivity, toxicity, carcinogenicity, mutagenicity, phytotoxicity, infectiousness or other harmful or potentially harmful properties or effects, including, without limitation, petroleum or petroleum products, asbestos, polychlorinated biphenyls (PCBs) and all of those chemicals, substances, materials, controlled substances, objects, conditions, wastes, living organisms or combinations thereof that are now or hereafter become listed, defined or regulated in any manner by any Environmental Law; (ii) "Environmental Law" shall mean any federal law, including, without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. §§ 9601, et seq.), the Hazardous Material Transportation Act, as amended (49 U.S.C. §§ 1801, et seq.), the Resource Conservation and Recovery Act, as amended (42 U.S.C. §§

1

9601, et seq.), the Toxic Substances Control Act, as amended (15 U.S.C. § 2601 et seq.), and in the regulations adopted and publications promulgated pursuant thereto, any state or local law, and/or any rule, regulation, ordinance, court decision, decree, order, directive, guideline, permit or permit condition relating to pollution or protection of the environment or other health and safety concern and whether now in existence or hereafter enacted and whether arising under any federal, state or local law.

## ARTICLE TWO
## RENT AND TERM/ADDITIONAL RENT

2.1     The term of this Lease shall be one (1) years commencing on August 1, 2021 and ending on July 31, 2022 (the "Term").

2.2     Rent payable by Lessee shall be as follows:

      a.     For the period August 1, 2021 to July 31, 2022, Lessee shall pay the sum of $2,050.00 per month as and for rent, payable in advance on the first day of each month, without demand and without any deduction or set off.

2.3     All rent payments due hereunder shall be paid to Lessor at P.O. Box 128, Avon Lake, Ohio, 44012.

2.4     If Lessee fails to pay any installment of rent when due or any other amounts payable under this Lease when due and such failure continues for ten (10) days, such unpaid amounts shall bear interest at the rate of fifteen percent (15%) per annum from the due date until date of payment.  Lessee shall be charged the sum of Fifty Dollars ($50.00) for each check returned to Lessor for insufficient funds.

2.5     Extensions.     (a) Provided Tenant is not in default of the obligations of this lease, and following the completion of the initial Lease term, Tenant shall have the option to renew for up to two (2) additional twelve (12) month term.

(b) Tenant must notify Landlord in writing no later than ninety (90) days prior to the expiration of the "Initial" Lease term of its desire to exercise this Lease extension option.

(c) Rental rate shall increase by 3% per annum

(d) All other terms and conditions of this lease will remain in full force and effect during the extension period(s).

(e) All terms of the lease are be honored by any and all future owners.

## ARTICLE THREE
## SECURITY DEPOSIT

3.1     Lessor acknowledges that Lessee will deposited the sum of $2,050.00 with Lessor, which Lessor shall continue to retain as security for the faithful performance of all of the terms and conditions of this Lease.  In no event shall Lessor be obligated to apply the deposit on rents or other charges in arrears or on damages for failure to perform the terms and conditions of this Lease by Lessee.  Application of the security deposit to rental arrears or damages shall be at the option of Lessor and the right to possession of the Premises by Lessor for nonpayment of rent or for any other reason shall not in any event be affected by this security deposit.  The security deposit is to be returned to Lessee no later than thirty (30) days after this Lease is terminated, if not applied toward the payment of rent in arrears or toward the payment of damages suffered by Lessor by reason of any breach of the terms and conditions of this Lease by Lessee. In no event is the security deposit to be returned until Lessee has vacated the Premises and delivered possession to Lessor. The security deposit will draw no interest.

3.2     In the event that Lessor repossesses the Premises due to default of Lessee or due to failure by Lessee to carry out the terms and conditions of this Lease, Lessor may apply the security deposit to all damages suffered to the date of repossession and to apply to damages that may accrue or be suffered by reason of any such default or breach.

### ARTICLE FOUR
### POSSESSION

4.1     Lessee and Lessor acknowledge that Lessee is already in possession of the Premises and shall be entitled continue to possess the Premises upon execution of this Lease.   Lessee further acknowledges that it is accepting the Premises in its "as-is, where-is" condition.

### ARTICLE FIVE
### UTILITIES AND OTHER SERVICES

5.1     Lessee shall place all utilities in its name upon receiving possession of the Premises from Lessor and shall during the Lease Term pay all charges for gas, heat, electricity, telephone, internet and removal of its trash and wastes therefrom. Lessor shall pay for all sewage and water charges billed by the City of Elyria on the separate meter, labeled 830 Taylor Street.  Lessor shall bill Lessee on a monthly basis for the actual cost of the water used and billed by the City of Elyria.

### ARTICLE SIX
### TAXES

6.1     Lessor shall be responsible to pay all real estate taxes and assessments levied against the Premises during the Term of this Lease.  In the event there is any increase during any year of the Term of this Lease in the real estate taxes and assessments for the Premises and above the amount of such taxes assessed for the 2020 tax year (payable in 2021), whether because of increased rate or valuation, Lessee, as additional rent, shall pay to Lessor upon presentation of paid tax bills an amount equal to 5.6% of any increase in taxes upon the Premises. The real estate tax basis for the Premises for the tax year 2020 is $35,272.50.

6.2     Lessee shall be responsible for any taxes levied upon the personal property of Lessee.

### ARTICLE SEVEN
3

## INSURANCE

7.1     Lessee agrees to and shall secure from a good and responsible company or companies doing insurance business in the State of Ohio and maintain during the entire term of this Lease, the following insurance coverage:

(a)     Public liability insurance in the minimum amount of One Million Dollars ($1,000,000.00) for loss from an accident resulting in bodily injury to or death of persons, and One Million Dollars ($1,000,000.00) for loss from an accident resulting in damage to or destruction of property.

(b)     Fire and extended coverage insurance on Lessee's fixtures, goods, furniture and inventory in or on the Premises, with coverage in an amount of not less than their replacement value.

7.2     Lessor agrees to and shall secure from a good and responsible company doing insurance business in the State of Ohio and maintain during the entire Term of this Lease, fire and extended insurance coverage for the Building in an amount deemed necessary by Lessor. In the event there is any increase during any year of the Term of this Lease in the insurance premium for the Premises and above the amount of such insurance premium for the 2021 tax year, Lessee, as additional rent, shall pay to Lessor upon presentation of paid insurance premium an amount equal to 5.6% of any increase in the insurance premium for the Premises. The insurance premium basis for the Premises for the year 2021 is $15,542.

7.3     The original policies may be retained by the Lessee, but the Lessee shall furnish the Lessor with certificates of such insurance prior to entering possession of the Premises and annually thereafter. The policies mentioned in Article 7.1(a) and 7.1(b) shall name Lessor as an additional named insured as its interest may appear.

7.4     Lessor and Lessee agree that in the event of loss due to any of the perils for which they have agreed to provide insurance, each party shall look solely to and make claims to such insurance carriers for recovery. Lessor and Lessee hereby grant to each other, on behalf of any insurer providing insurance to either of them with respect to the Premises, a waiver of any right of subrogation which any insurer of one party may acquire against the other by virtue of payment of any loss under such insurance.

7.5     Proof must also be given by Lessee to Lessor that each of the policies provided for herein expressly provide that the policy shall not be canceled or altered without thirty (30) days prior written notice to Lessor.

7.6     If either party at any time during the term hereof should fail to secure or maintain the foregoing insurance, the other party may obtain such insurance in the other's name or as its agent and the cost of such insurance shall be immediately due by the defaulting party to the other.

7.7     Each of the aforesaid policies shall be issued by companies authorized to do business in the State of Ohio possessing a Class VIII or better rating.

4

## ARTICLE EIGHT
## LEASEHOLD IMPROVEMENTS

8.1    Lessee shall not make leasehold improvements to the Premises unless it first obtains the prior written consent of Lessor, which consent shall not be unreasonably withheld. If Lessor permits leasehold improvements by the Lessee, all improvements shall be performed at Lessee's sole cost and expense.   All leasehold improvements which constitute structural alterations such as walls, floors, ceilings, windows, doors, lighting, heating and air conditioning fixtures and facilities, shall remain thereon and shall not be removed therefrom and shall be and remain the separate property of Lessor.

8.2    In the case of any installation, alteration or improvement made, or permitted or directed to be made, by Lessee, Lessee shall see to it that all necessary permits and/or variances are obtained and that the same are made in strict accordance with plans approved by Lessor and in accordance with all applicable ordinances, statutes and regulations. Lessee shall not allow liens of any nature to be placed or allowed to remain against the Premises by any materialman, laborer, contractor or subcontractor. If, by reason of any action or actions by Lessee, any mechanics or other liens are filed, whether against Lessee or Lessee's interest herein or purportedly against Lessor or Lessor's interest in the Premises, such lien or liens shall be discharged by Lessee, at Lessee's cost and expense, by bond or otherwise, within thirty (30) days after the filing of such lien or liens, and the filing of the lien or liens, if so discharged, shall not be deemed a violation of the provisions of this section.

8.3    Lessee shall remove all of its trade fixtures upon the expiration or termination of this Lease provided that such removal shall be made within ten (10) days after expiration or termination and provided further that all resultant damage or injury to the Premises shall be repaired.

## ARTICLE NINE
## MAINTENANCE, REPLACEMENTS AND REPAIRS

9.1    Lessor shall have the obligation to keep and maintain the structural components, columns, rafters, purlins, girts, floors, foundations and exterior of the Premises, including the roof, downspouts, exterior storm drains and exterior walls of the Premises in good repair and shall replace the same if necessary, unless any such repair or replacement is necessitated by reason of the act or negligence of Lessee or any of its agents, employees, contractors, licensees, invitees or permitted subtenants or assigns, in which case Lessee shall make such repair or replacement at its sole cost in accordance with Lessor's reasonable instructions.  In no case, however, shall Lessor be liable for any damage to the interior of the Premises or for any damage to Lessee's contents or personal property or for any other loss or damage suffered by Lessee, its successors, assigns or permitted subtenants and/or assigns, for any reason including failure to maintain as contemplated herein, beyond the limits of insurance coverage which Lessor maintains and in case of such liability Lessee shall look solely to and make claims against Lessor's insurance carrier for recovery.

9.2    Lessee shall be responsible to repair, maintain and replace the building systems at the Premises including doors, overhead doors, windows, plumbing fixtures, pipes, electrical wiring systems and fixtures, floors, interior walls, stairways, equipment, railings, entryways and awnings. heating, air conditioning, electrical and plumbing systems in the Premises.   With respect to the heating, air conditioning and ventilation systems in the Premises, Lessee shall only be responsible for the first $500.00 in repairs per Lease Year. Any repairs or maintenance to the heating, air conditioning and

5

ventilation system of the Premises beyond $500.00 per Lease Year shall be the responsibility of Lessor. Lessee shall also have the obligation to make any and all other repairs and to keep the interior of the Premises in good order and repair, including the replacement of all broken glass with glass of the same size and quality of that broken. At the termination of this Lease, Lessee shall return the Premises to Lessor in the same condition as originally delivered, excepting only ordinary wear and tear or permitted alterations, and provided further that the leasehold improvements which are to be considered Lessor's property shall not be removed. Lessee shall be responsible, at its sole cost, to keep the Premises in a clean, neat and orderly condition.

9.3     If Lessee shall fail to perform any of its obligations under this Article, Lessor may complete any such work. Thereafter Lessor shall invoice Lessee for such costs and the same shall be due and payable as additional rent within ten (10) days after delivery of such invoice.

9.4     Lessor shall be responsible for all common area maintenance for the property on which the Premises is situated.

## ARTICLE TEN
## QUIET POSSESSION

10.1     Lessor shall place Lessee in quiet possession of the Premises and cause Lessee to remain in said quiet possession against all persons lawfully claiming the same during the term of this Lease.

10.2     Lessee agrees that the Premises is a non-smoking facility. Lessee, nor its members, employees, agents, customers, contractors or invitees shall smoke inside the Premises.

## ARTICLE ELEVEN
## DEFAULT BY LESSEE

11.1     If Lessee shall allow the rent or any additional rent to be in arrears by more than ten (10) days, or shall remain in default under any other condition of this Lease for a period of thirty (30) days after written notice to Lessee, Lessor may, at its option, proceed to have Lessee evicted by judicial process. Thereafter Lessor shall be obligated to attempt in good faith to re-let the Premises or any part thereof, for all or any part of the remainder of the Term, to a party satisfactory to Lessor, and at such monthly rental as Lessor may with reasonable diligence be able to secure. If in the event of termination of this Lease due to Lessee's default, Lessor should be unable to re-let after reasonable efforts to do so, or should such monthly rental be less than the rental Lessee was obligated to pay under this Lease, or any renewal thereof, then Lessee shall pay the amount of any such deficiency plus the expense of re-letting and Lessor's reasonable attorney fees in connection with such default and re-letting to Lessor.

11.2     All rights and remedies of Lessor under this Lease shall be cumulative, and none shall exclude any other right or remedy at law. Such rights and remedies may be exercised and enforced concurrently and whenever and as often as occasion therefore arises.

## ARTICLE TWELVE
## CONDEMNATION

6

12.1    If during the term of this Lease or any renewal all or any part of the Premises should be taken for any public or quasi-public use under any law, ordinance or regulation, or by right of eminent domain, or should be sold to a condemning authority under threat of condemnation, so as to render the Premises untenable, this Lease shall terminate and the rent shall be reduced to zero during the unexpired portion of the term of this Lease, effective as of the date of the taking of said Premises by the condemning authority. In such case, the entire compensation award for the taking of real estate shall belong to the Lessor without any deduction for the value of Lessee's leasehold.

12.2    If only a part of the Premises is taken and the Premises are not rendered untenable, rent shall be reduced in proportion to the square footage of the Premises so taken; provided, however, that in such circumstances of a partial taking of the Premises, Lessee shall have the right to terminate this Lease by providing Lessor with thirty (30) days prior written notice of such termination.

## ARTICLE THIRTEEN
## WASTE AND NUISANCE

13.1    Lessee shall not commit, or suffer to be committed, any waste on the Premises, nor shall it maintain, commit or permit the maintenance or commission of any nuisance on the Premises or use the Premises for any unlawful purpose.

## ARTICLE FOURTEEN
## INDEMNITY

14.1    Notwithstanding anything herein to the contrary, Lessee, for itself and its successors and permitted subtenants and assigns, agrees to defend, indemnify and hold harmless Lessor, Lessor's successors and assigns, and Lessor's members, officers, members, directors, agents and/or employees, at any tier, (collectively "the Lessor Indemnified Parties") for an unlimited duration of time from and against any and all claims, demands, damages, costs and expenses, including reasonable attorney's fees for the defense thereof, arising from the conduct or management of Lessee's business in the Premises or with respect to any injury (including death) suffered by any agent, contractor, employee, invitee, licensee, permitted subtenant or assignee of Lessee (its successors or assigns) in or about the Premises or adjacent areas due to Lessee's negligence or from any breach on the part of it of any condition of this Lease, or from any act or negligence of Lessee, its agents, contractors, employees, invitees, licensees or permitted subtenants or assigns in or about the Premises or adjacent areas.  In case of any action or proceeding brought against Lessor by reason of any such claim, Lessee covenants to defend such action or proceeding by counsel acceptable to Lessor and Lessee.

14.2    The foregoing indemnification shall survive the termination or expiration of this Lease.

## ARTICLE FIFTEEN
## INSPECTION BY LESSOR

15.1    Upon reasonable prior notice to Lessee, Lessee shall permit Lessor and its agents to enter into and upon the Premises at all reasonable times for the purpose of inspecting the same, provided, however, that Lessor shall be permitted to enter the Premises at any time without notice during the event

7

of an emergency.  During the last sixty (60) days of this Lease, Lessor may place for sale/for rent signs on the Premises and may show the Premises to potential Buyers/Lessees.

## ARTICLE SIXTEEN
## SURRENDER OF PREMISES

16.1     Lessee shall without demand therefore and at its sole cost and expense within ten (10) days after expiration or sooner termination of the Term hereof, remove all personal property and trade fixtures belonging to it and repair all damage to the Premises returning it to the condition it was in prior to the installation of the property so removed.   Upon expiration or sooner termination of this Lease, the Premises shall be surrendered and delivered without demand to Lessor in good condition, ordinary wear and tear excepted.  Leasehold improvements which are Lessor's property shall not be removed.

## ARTICLE SEVENTEEN
## SIGNS

17.1     Lessee may, at its sole cost and expense, place signs on the Building, provided that the size and specifications of such signs are approved by Lessor, which approval shall not be unreasonably withheld. Such placement must also be in accordance with all applicable laws and Lessee shall obtain such governmental approvals for placement thereof as are necessary.  Lessee shall, at its sole cost, be responsible to keep all its signs in good order and repair.

## ARTICLE EIGHTEEN
## DAMAGE OR DESTRUCTION/FORCE MAJEURE

18.1     In the event the Premises is damaged by fire or other cause, Lessor, at Lessor's sole cost and expense, shall, as soon as reasonably possible thereafter, commence repair, restoration, and reconstruction of the Premises and pursue it diligently until completion; provided, however, that Lessor, in so doing, is only required to utilize whatever insurance proceeds are received by it as a result of such damage.  In the event the damage to the Premises is of a nature that cannot be repaired, restored, or reconstructed within one hundred eighty (180) days of the date of damage, or such longer period as may be mutually agreed by the parties, either party may cancel and terminate this Lease by giving the other party notice in writing in the manner prescribed by Article 20.11 of its intention to cancel this Lease no later than thirty (30) days after the determination that the repair will require more than one hundred eighty (180) days to complete, whereupon the term of this Lease shall terminate upon such notice being given.

18.2     In the event of repair, reconstruction and restoration by Lessor as provided in this Article, the rental payable under this Lease shall be reduced in proportion to the square footage unusable by Lessee during the period of such repair, reconstruction, or restoration, unless the damage or destruction was caused by the negligent act or omission of Lessee or Lessee's agents, employees or invitees, in which event the provisions of this sentence shall not apply. Lessee shall not be entitled to any compensation or damages for loss of the use of the whole or any part of the Premises or any injury or interference with Lessee's business and/or any inconvenience or annoyance occasioned by such damage, repair, reconstruction or restoration to the Premises, except as otherwise provided by applicable insurance coverages, if any.

8

18.3     Lessee shall not be released from any of its obligations under this Lease except to the extent and under the conditions expressly stated in this Article. Notwithstanding anything to the contrary contained in this Article, if Lessor is delayed or prevented from repairing or restoring the Premises for a period equal to or greater than one hundred eighty (180) days after the occurrence of the damage or destruction by reason of an event of force majeure, such as an act of God, war, riots, pandemic, governmental restrictions, strike, inability to procure the necessary labor or materials, or other cause beyond the control of Lessor, the time for repair, restoration or reconstruction shall be extended for a period equal to any such event of force majeure.

18.4     Notwithstanding anything to the contrary in this Article, Lessor shall have no obligation whatsoever to repair, reconstruct or restore the Premises when the damage resulting from any casualty covered under this Article occurs during the last six (6) months of the Term. If Lessor does not restore, repair, or reconstruct the Premises in any material respect for any of the above-stated reasons, Lessee may by notice to Lessor, in the manner prescribed in Article 20.11, terminate this Lease.

## ARTICLE NINETEEN
## ASSIGNMENT AND SUBLETTING BY LESSEE

19.1     Lessee may not assign this Lease or sublet all or any portion of the Premises unless it obtains Lessor's prior written consent.  In the case any assignment or subletting, Lessee shall not be released from its obligations and responsibilities hereunder.

## ARTICLE TWENTY
## MISCELLANEOUS

20.1     This Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns when permitted by this Lease.

20.2     This Lease shall be construed under and in accordance with the laws of the State of Ohio, and all obligations of the parties created hereunder are performable in Lorain County, Ohio.

20.3     In case any one or more of the provisions contained in this Lease shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision thereof and this Lease shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

20.4     This Lease constitutes the sole and only agreement of the parties hereto and supersedes any prior understandings or written or oral agreements between the parties respecting the within subject matter.

20.5     No amendment, modification or alteration of the terms hereof shall be binding unless the same be in writing, dated subsequent to the date hereof, and duly executed by the parties hereto.

20.6     The rights and remedies provided by this Lease are cumulative and the use of any one right or remedy by either party shall not preclude or waive its right to use any or all other remedies.  Said

9

rights and remedies are given in addition to any other rights the parties may have by law, statute, ordinance or otherwise.

20.7    No waiver by the parties hereto of any default or breach of any term, condition or covenant of this Lease shall be deemed to be a waiver of any other breach of the same or of any other term, condition or covenant contained herein.

20.8    Neither Lessor nor Lessee shall be required to perform any term, condition or covenant in this Lease so long as such performance is delayed or prevented by any acts of God, strikes, lockout or restriction by any governmental authority, civil riot, flood and any other cause not reasonably within the control of the Lessor or Lessee and which by the exercise of due diligence Lessor or Lessee is unable, wholly or in part, to prevent or overcome.

20.9    This Lease shall be subject to and subordinate to any mortgage that is now or hereafter placed upon the real estate of which the Premises is a part and Lessee agrees to execute and deliver a subordination agreement, which shall contain typical non-disturbance covenants, upon the request of Lessor's lender(s) or the lender(s) of any purchaser of the Premises.  Lessee agrees that any time and from time to time upon not less than 15 days prior written request by Lessor to execute, acknowledge and deliver to Lessor a statement in writing certifying that this Lease is unmodified and in full force and effect (or if there have been modifications that the same is in full force and effect as modified and stating the modification), and the dates to which the Base rent and other charges have been paid in advance, if any, it being intended that any such statement delivered pursuant hereto may be relied upon by a prospective purchaser or mortgagee of Lessor's interest in the Premises.

20.10    If Lessee should continue to occupy the Premises beyond the expiration of the Term, such additional tenancy shall be on a month-to-month basis and the rent payable during said month-to-month tenancy shall be equal to the monthly rent paid in the last month of the Term plus 25%.

20.11    Any notice, statement, or communication required or permitted to be given hereunder shall be considered as having been given if personally delivered or if sent via overnight courier (Fed Ex/UPS), to the respective addresses of the parties specified in the agreement to the following addresses:

IF TO LESSOR:    Warwick Investments, LLC
Attn: John Tillery
P.O. Box 128
Avon Lake, Ohio 44012


IF TO LESSEE:    Ecom Direct LLC
Attn: William Holton
411 Abbe Rd N
Elyria, Ohio 44035

20.12    At either parties request, the parties shall execute a short form Memorandum Lease upon execution hereof, which either party may record.  This Lease shall not otherwise be recorded.

10

20.13    If at any time during the term of this Lease there shall be filed by or against Lessee in any court, pursuant to any statute either of the United States or of any state, a petition in bankruptcy or insolvency or for reorganization or appointment of a receiver or trustee of all or a part of the property of Lessee, or if Lessee makes an assignment for the benefit of creditors, this Lease, at Lessor's option, exercised after expiration of the period provided below, may be canceled and terminated. In that event, neither Lessee nor any person claiming through or under Lessee by virtue of any statute or of any order of any court shall be entitled to possession or to remain in possession of the Premises, but shall promptly quit and surrender the Premises.  If any of the above-specified actions against Lessee shall continue for a period of thirty (30) days, it shall be deemed a breach of this Lease by Lessee, entitling Lessor to proceed as provided in this Article 20.13.

20.14    If Lessor shall sell or otherwise transfer its interest in the Premises, and the purchaser or transferee thereof shall assume or become liable under this Lease, Lessee agrees that Lessor shall thereafter have no liability to Lessee under this Lease or any modification or amendment thereof or extensions or renewals thereof and Lessee shall look solely to the purchaser or transferee to satisfy any such liability except for liabilities which accrued prior to any such transfer for which Lessor shall remain liable.

Executed this __20__ day of __July_____, 2021.


Lessor:                                                          Lessee:

Warwick Investments LLC                                          Ecom Direct LLC

By: _____                    By: _____

Printed Name: ____John Tillery____               Printed Name: ____William Holton_____

Title: __Managing Member_____

                                                                Title:
                                                                _____
                                                                _____
                                                                _____
                                                                _____


                                                                Personally Guaranteed by:

                                                                _____
                                                                William Holton


11

# Exhibit E

**CHRISTOPHER H. SMITH**
4TH DISTRICT, NEW JERSEY

CONSTITUENT SERVICE CENTERS:

OCEAN
Visit: 33 Washington Street
Toms River, NJ 08754
Mail: PO Box 728
Toms River, NJ 08754
(732) 504-0567

MONMOUTH
1715 Highway 35 North
Suite 303
Middletown, NJ 07748
(732) 780-3035



## Congress of the United States
### House of Representatives

CHAIRMAN, CONGRESSIONAL EXECUTIVE
COMMISSION ON CHINA

CHAIRMAN, GLOBAL HEALTH, GLOBAL
HUMAN RIGHTS, AND INTERNATIONAL
ORGANIZATIONS SUBCOMMITTEE

CO-CHAIRMAN, TOM LANTOS HUMAN RIGHTS
COMMISSION

SENIOR MEMBER, HOUSE FOREIGN AFFAIRS
COMMITTEE
_____

www.chrissmith.house.gov

August 15, 2024

Stephen T. Hartell
Vice President, U.S. Public Policy
Amazon Corporation, LLC
410 Terry Avenue North
Seattle, WA 98109

Dear Mr. Hartell:

I write to you today on behalf of many constituents who have reached out to me regarding the sudden and unexpected suspension of their Amazon seller accounts and the devastating impact this has had on their businesses, employees, and families.

As the Congressman for New Jersey's Fourth Congressional District. I have heard of hundreds of seller accounts in my district alone that have been locked down by Amazon with very little communication or detail. Most have received a generic form letter-type response stating that the action is "in accordance with Section 3 of the Business Solutions Agreement." Yet, there is no information provided to explain how Section 3 specifically relates to their case or what specific products may be in question.

I have been advised that when my constituents—your selling partners—attempt to contact Amazon to determine the exact issue, offense, product or supplier, most receive no assistance at all. After days and weeks of calls and emails to Amazon, the "lucky" ones get an inadequate video or phone call that typically ends in no resolution.

Many also note that they are lead on by a cryptic or non-existent appeal process. There is little or no opportunity for direct contact with an Amazon representative with whom the constituents can advocate to get their businesses released—and assets rightfully returned—and no information as to which product or supplier is in question or creating a problem, if there even is an authenticated problem. The forced arbitration process from the Business Seller Agreement proves costly and limited in providing discovery opportunities for the third-party seller trying to gather information and recoup their own assets.

Perhaps most troubling is the fact that after making a seemingly random determination, Amazon holds all inventory—even products unrelated to the "offense"—and **confiscates hundreds of thousands of constituents' dollars with no return date in sight.** The final result is the total devastation of businesses and livelihoods.

# Exhibit F

## DISASSOCIATION AND RELEASE OF CLAIMS AGREEMENT

This Disassociation and Release of Claims Agreement (the **"Agreement"**) is entered into by and between **CLICK PROFIT, LLC**, a Florida limited liability company ("Click Profit"), and **WILLIAM HOLTON**, AN INDIVIDUAL "**Mr. Holton**") with Click Profit, and Mr. Holton collectively referred to as the **"Parties"**) as of October 17th, 2023 (the **"Effective Date"**).

### RECITALS

**WHEREAS**, on or around April 15, 2021, Click Profit was formed for the purposes of exploring, developing and starting a for-profit business engaged in the business of providing consulting, advisory, management and other ancillary services to customers starting, owning and/or operating e-commerce stores (the "**Ecommerce Business**").

**WHEREAS**, Click Profit has developed a number of confidential and proprietary processes, services, clients, customers, technology, inventions, ideas, contracts, financial information, developments, business strategies, pricing, current and prospective customers, marketing plans, and trade secrets (the "**Assets**") in connection with and for the Ecommerce Business that has given Click Profit a competitive advantage in the marketplace.

**WHEREAS**, as of the Effective Date, Click Profit has 35 customers that own and operate Amazon Ecommerce Stores (the "**Existing Customers**"). A true and correct schedule of the Existing Customers is attached hereto as **Exhibit "A"** and by reference made a part hereof.

**WHEREAS**, Mr. Holton is a member of Click Profit and owns a thirty-three and 33/100 percent (33.33%) of the outstanding membership interests in Click Profit, and Mr. Holton is a party to the Operating Agreement of Click Profit dated September 1, 2021 (the "**Operating Agreement**").

**WHEREAS**, Mr. Holton is also employed as a manager of Click Profit and is primarily responsible for managing the Existing Customers and the Existing Customer's inventory.

**WHEREAS**, Click Profit desires to transfer all of the Existing Customers and the Existing Customer's inventory, to Automation Industries, LLC, a Florida limited liability company and an unrelated third-party servicer provider (the "**Third-Party Service Provider**").

**WHEREAS**, Click Profit would not be able to assign the Existing Customers to the Third-Party Service Provider without the assistance of Mr. Holton who is the person with most knowledge of Existing Customers and the Existing Customer's inventory.

Document Ref: LBFYE-WUO6M-SYWAY-JSEVK

**WHEREAS**, Mr. Holton desires to dissociate from Click Profit and sever and terminate his relationship with the Ecommerce Business as well as transfer his interests, claims and rights in Click Profit, the Ecommerce Business, and the Assets to Click Profit.

**NOW, THEREFORE**, in consideration of the mutual promises and covenants made herein, and with the intent to be legally bound hereby, the Parties agree as follow:

1.) Mr. Holton's last day as a member, manager, and employee of Click Profit is October 17th, 2023 (the "**Separation Date**"). After the Separation Date, Mr. Holton will not represent himself as being a member, employee, affiliate, officer, agent, or representative of Click Profit for any purpose other than assisting Click Profit with transferring the Existing Clients to the Third-Party Service Provider. Other than the Separation Payment (defined below), Mr. Holton is not entitled to any further compensation, monies, profits, distributions or other benefit from Click Profit. Mr. Holton agrees not to seek future employment with Click Profit, and that as of the Separation Date, Mr. Holton will no longer have any interests, rights, or claims to or in Click Profit, the Ecommerce Business, the Assets, or any other assets, accounts, proceeds, funds, profits or property owned by Click Profit.

2.) Return of Property. On or before the Effective Date, Mr. Holton will return all of Click Profit's property, including devices, laptops, computers, telephones, mobile phones, hand-held electronic devices, credit cards, electronically stored documents or files, physical files, and any other Click Profit property in Mr. Holton's possession, custody or control.

3.) Transfer of Interests. On or before the Effective Date, Mr. Holton will transfer all of his interests, rights, or claims in Click Profit, the Ecommerce Business, the Assets, and other assets, accounts, proceeds, funds or property owned by Click Profit to Click Profit, including all of his rights under the Operating Agreement. Mr. Holton agrees to execute and deliver to Click Profit an Assignment of Membership Interest in the same form as the assignment attached hereto as **Exhibit "B"** and by reference made a part hereof.

4.) Assistance with Transferring the Existing Clients to the Third-Party Service Provider. Mr. Holton will assist Click Profit with transferring all of the Existing Customers, including any inventory owned by or for the benefit of the Existing Customers, to the Third-Party Service Provider no matter how long this process will take. Mr. Holton acknowledges and agrees that without Mr. Holton's assistance, Click Profit would not be able to transfer the Existing Customers, including their inventory, to the Third-Party Service Provider and that Mr. Holton's agreement to assist with transferring the Existing Clients is a material part of the consideration received by Click Profit under this Agreement. Mr. Holton acknowledges and agrees to help Click Profit transfer all remaining customers over to Third Party and also agrees to assist with any disputes with current customers whether that is assisting with email responses, phone calls or any other related activity with regards to transferring clients over or ending current contracts with clients.

Document Ref: LBFYE-WUOSM-SYWAY-JSEVK

5.) <u>Mr. Holton's Representations</u>.   Mr. Holton specifically represents, warrants, and confirms that Mr. Holton:

    (a) Has not filed any claims, complaints, or actions of any kind against Click Profit with any court of law, or local, state, or federal government or agency;

    (b) As of the date hereof and to the best of Mr. Holton's knowledge, he has no claims against Click Profit in law or equity of any nature whatsoever which have not been filed;

    (c) Has been properly paid for work by Click Profit;

    (d) Has received all compensation, including profits and distributions due to him as of the Separation Date;

    (e) Has not engaged in any unlawful conduct relating to the business of Click Profit;

    (f) Has not sold any of Click Profit's services to any third-party;

    (g) Has not entered into any into any contract with any third-party in which Click Profit would be legally bound; *and*

    (h) Has not accepted payments from any third-party which belong to Click Profit.

If any of these statements is not true, Mr. Holton cannot sign this Agreement and must notify Click Profit immediately in writing of the statements that are not true.

6.)

    <u>Separation Payment</u>.   In consideration for Mr. Holton's execution of, and compliance with this Agreement, including Mr. Holton's transfer of all of his membership interests in Click Profit, waiver and release of claims in Section 6, and assistance with transferring the Existing Clients to the Third-Party Service Provider, Click Profit agrees to pay Mr. Holton Two hundred and Thirty Thousand Dollars (USD $230,000.00) (the "**Separation Payment)** in five installments. The first $160,000.00 installment (the "**Initial Installment**") due to Mr. Holton within five (5) business days after the expiration of the revocation period described in Section 6(b)(vii) below, and four consecutive payments of (i) $17,500/month starting December 1st, 2023 ("**Final Installments**"); and (ii) a $5,000 per month stipend for ongoing support and assistance in transferring the Existing Clients to the Third Party. Mr. Holton further understands, acknowledges, and agrees that the Separation Payment is in exchange for executing (and not revoking) this Agreement and the general release contained herein and transferring his rights, interests, and claims to or in Click Profit, the Ecommerce Business, and the Assets of Click Profit. Mr. Holton further acknowledges that Mr. Holton is not entitled to any additional payment or consideration not specifically referenced in this Agreement.

Release

### (i)  Mr. Holton's General Release and Waiver of Claims

In exchange for the consideration provided in this Agreement, Mr. Holton and Mr. Holton's heirs, executors, representatives, agents, insurers, administrators, successors, and assigns (collectively, the "**Releasors**") irrevocably and unconditionally fully and forever waive, release, and discharge Click Profit, Craig Emslie, Patrick mcGeoGhean, and each of Click Profits parents, subsidiaries, affiliates, predecessors, successors, and assigns, and all of their respective officers, directors, managers, employees, members shareholders, and partners, in their corporate and individual capacities (collectively, the "**Releasees**") from any and all claims, demands, actions, causes of actions, obligations, judgments, rights, fees, damages, debts, obligations, liabilities, and expenses (inclusive of attorneys' fees), of any kind whatsoever (collectively, "**Claims**"), whether known or unknown, from the beginning of time to the date of Mr. Holton's execution of this Agreement, including, without limitation, any claims under any federal, state, local, or foreign law, that Releasors may have, have ever had or may in the future have arising out of, or in any way related to Mr. Holton's membership in or affiliation with Click Profit and any actual or alleged act, omission, transaction, practice, conduct, occurrence, or other matter, including, but not limited to:

(i)    Any and all claims for compensation of any type whatsoever, including but not limited to claims for salary, wages, bonuses, commissions, incentive compensation, vacation, severance, distributions, or profit-sharing that may be legally waived and released;

(ii)   Any and all claims to Click Profit, the Assets, the Ecommerce Business, the Assets, or any other asset, account, proceeds, funds or property owned by Click Profit; *and*

(iii)  Any and all claims arising under tort, contract, and quasi-contract law, including but not limited to claims of breach of an expressed or implied contract, tortious interference with contract or prospective business advantage, breach of the covenant of good faith and fair dealing, promissory estoppel, detrimental reliance, invasion of privacy, nonphysical injury, personal injury or sickness, or any other harm, wrongful or retaliatory discharge, fraud, defamation, slander, libel, false imprisonment, and negligent or intentional infliction of emotional distress.

b.)    Older Workers' Benefits Protection Act

Release

(i) Mr. Holton's General Release and Waiver of Claims

In exchange for the consideration provided in this Agreement, Mr. Holton and Mr. Holton's heirs, executors, representatives, agents, insurers, administrators, successors, and assigns (collectively, the "**Releasors**") irrevocably and unconditionally fully and forever waive, release, and discharge Click Profit, Craig Emslie, Patrick mcGeoGhean, and each of Click Profits parents, subsidiaries, affiliates, predecessors, successors, and assigns, and all of their respective officers, directors, managers, employees, members shareholders, and partners, in their corporate and individual capacities (collectively, the "**Releasees**") from any and all claims, demands, actions, causes of actions, obligations, judgments, rights, fees, damages, debts, obligations, liabilities, and expenses (inclusive of attorneys' fees), of any kind whatsoever (collectively, "**Claims**"), whether known or unknown, from the beginning of time to the date of Mr. Holton's execution of this Agreement, including, without limitation, any claims under any federal, state, local, or foreign law, that Releasors may have, have ever had or may in the future have arising out of, or in any way related to Mr. Holton's membership in or affiliation with Click Profit and any actual or alleged act, omission, transaction, practice, conduct, occurrence, or other matter, including, but not limited to:

(i)     Any and all claims for compensation of any type whatsoever, including but not limited to claims for salary, wages, bonuses, commissions, incentive compensation, vacation, severance, distributions, or profit-sharing that may be legally waived and released;

(ii)    Any and all claims to Click Profit, the Assets, the Ecommerce Business, the Assets, or any other asset, account, proceeds, funds or property owned by Click Profit; *and*

(iii)   Any and all claims arising under tort, contract, and quasi-contract law, including but not limited to claims of breach of an expressed or implied contract, tortious interference with contract or prospective business advantage, breach of the covenant of good faith and fair dealing, promissory estoppel, detrimental reliance, invasion of privacy, nonphysical injury, personal injury or sickness, or any other harm, wrongful or retaliatory discharge, fraud, defamation, slander, libel, false imprisonment, and negligent or intentional infliction of emotional distress.

b.)    Older Workers' Benefits Protection Act

(a) Non-Disparagement. Each of the parties agrees and covenants that it will not at any time make, publish, or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments, or statements concerning the other party or such other party's Assets, businesses, or any of its employees, members, managers, directors, officers, and existing and prospective customers, suppliers, investors, and other associated third-parties.

(b) Non-Disclosure. Mr. Holton understands and consents that much of Assets are confidential and proprietary programs, processes, systems, software, programs, vendors, client list, pricing models, marketing strategies, and suppliers (collectively, "**Trade Secrets**") that Mr. Holton learned from Click Profit during his course of his involvement with Click Profit. Click Profit has taken reasonable steps to protect such Trade Secrets from being disseminated into the public domain, and that any unauthorized disclosure of such Trade Secrets would result in irreparable harm to Click Profit and its business. Mr. Holton understands and agree to refrain from any unauthorized disclosures of such information to third-parties

8. Remedies. In the event of a breach or threatened breach by either party of any of the provisions of this Agreement, such party hereby consents and agrees that the other party shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that money damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. Any equitable relief shall be in addition to, not in lieu of, legal remedies, monetary damages, or other available relief.

9. Successors and Assigns.

    (a) Assignment by Click Profit

Click Profit may freely assign this Agreement at any time. This Agreement shall inure to the benefit of Click Profit and its successors and assigns.

    (b) No Assignment by Mr. Holton

Mr. Holton may not assign this Agreement in whole or in part. Any purported assignment by Mr. Holton shall be null and void from the initial date of purported assignment.

10. Additional Representations and Warranties. Mr. Holton hereby acknowledges that:

    (a)    Mr. Holton's waiver and release do not apply to any rights or claims that may arise after the execution date of this Agreement;

    (b)    Mr. Holton has carefully read and fully understands all of the provisions of the Agreement; *and*

(c)    the payments and other benefits which Click Profit has agreed to provide under this Agreement are payments and benefits to which Mr. Holton would not be entitled were it not for this Agreement.

11. Consultation with Attorney. Mr. Holton has been advised by Click Profit to consult with an attorney prior to the execution of this Agreement.

12. Capacity    Mr. Holton represents that Mr. Holton understands the contents of this Agreement and that Mr. Holton executed it knowingly and voluntarily and understands that after the Agreement becomes effective Mr. Holton cannot proceed against any Releasee on account of the matters referred to herein. Mr. Holton represents and warrants that Mr. Holton has the authority and capacity to execute this Agreement.

13. Indemnification.

(a)    Mr. Holton agrees to defend, indemnify, and hold harmless Click Profit, Craig Emslie, and Patrick Mcgeoghean, including their successor, and assigns, from and against any claim, demand, action, proceeding, threatened or actual, judgment, liability, loss, damage, costs, expenses, and attorneys' fees incurred by Click Profit, Craig Emslie, or Patrick Mcgeoghean related to or arising from Mr. Holton's' erroneous or inaccurate representation(s) made in or in connection with this Agreement, or Mr. Holton's failure to honor his contractual obligations in this Agreement.

(b)    Click Profit agrees to defend, indemnify, and hold harmless Mr. Holton from and against any claim, demand, action, proceeding, threatened or actual, judgment, liability, loss, damage, costs, expenses, and attorneys' fees incurred by Mr. Holton related to or arising from Click Profit's erroneous or inaccurate representation(s) made in or in connection with this Agreement, or Click Profit's failure to honor its contractual obligations in this Agreement.

14. Governing Law; Jurisdiction and Venue. This Agreement, for all purposes, shall be construed in accordance with the laws of Florida without regard to any conflicts of laws principles that would require the laws of any other jurisdiction to apply. Any action or proceeding by either of the Parties to enforce this Agreement shall be brought only in any state or federal court located in the state of Florida, county of Duval. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

15. Entire Agreement. Unless specifically provided herein, this Agreement contains all of the understandings and representations between Click Profit and Mr. Holton relating to the subject matter hereof and supersedes all prior and contemporaneous understandings, discussions, agreements, representations, and warranties, both written and oral, regarding such subject matter.

16. Modification and Waiver. No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by Mr. Holton

and by Click Profit. No waiver by any Party of any breach by the other party of any condition or provision of this Agreement to be performed by any other party shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by any Party in exercising any right, power, or privilege under this Agreement operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any such right, power, or privilege.

17. Severability.  Should any provision of this Agreement be held by a court or arbitral authority of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held to be unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the Parties with any such modification to become a part hereof and treated as though originally set forth in this Agreement.

The Parties further agree that any such court is expressly authorized to modify any such unenforceable provision of this Agreement instead of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement, or by making such other modifications as it deems necessary to carry out the intent and agreement of the Parties as embodied in this Agreement to the maximum extent permitted by law.

The Parties expressly agree that this Agreement as so modified by the court shall be binding upon and enforceable against each of them. If any of the provisions of this Agreement is held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions hereof, and if such provision or provisions are not modified as provided above, this Agreement shall be construed as if such invalid, illegal, or unenforceable provisions had not been set forth in it.

18. Captions.  Captions and headings of the sections and paragraphs of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the caption or heading of any section or paragraph.

19. Counterparts.  The Parties may execute this Agreement in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same instrument. Delivery of an executed counterpart's signature page of this Agreement by facsimile, email in portable document format (.pdf), or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document has the same effect as delivery of an executed original of this Agreement.

20. Non-admission.  Nothing in this Agreement shall be construed as an admission by Click Profit of any wrongdoing, liability, or noncompliance with any federal, state, city, or local rule, ordinance, statute, common law, or other legal obligation.

21. Acknowledgment of Full Understanding.  MR. HOLTON ACKNOWLEDGES AND AGREES THAT MR. HOLTON HAS FULLY READ, UNDERSTANDS, AND VOLUNTARILY ENTERS INTO THIS AGREEMENT.  MR. HOLTON

# Signature Certificate

Reference number: LBFYE-WUO6M-SYWAY-JSEVK

| Signer | Timestamp | Signature |
|---|---|---|
| **Profitry INC**<br>Email: contracts@clickprofit.io | | *Click Profit LLC* |
| Sent:<br>Viewed:<br>Signed: | 25 Oct 2023 21:17:16 UTC<br>25 Oct 2023 21:17:17 UTC<br>25 Oct 2023 21:17:50 UTC | IP address: 76.217.90.67<br>Location: Miami, United States |
| **Bill Holton**<br>Email: bill@clickprofit.io<br>Shared via link | | *William Holton* |
| Sent:<br>Viewed:<br>Signed: | 25 Oct 2023 21:17:16 UTC<br>25 Oct 2023 21:25:46 UTC<br>25 Oct 2023 21:31:52 UTC | IP address: 174.104.231.162<br>Location: Elyria, United States |

Document completed by all parties on:
25 Oct 2023 21:31:52 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature
solution trusted by 40,000+ companies worldwide.



Exhibit "B"

## ASSIGNMENT, CONVEYANCE AND TRANSFER

### OF

### MEMBERSHHIP INTEREST IN LIMITED LIABILITY COMPANY

**BY THIS ASSIGNMENT** made effective this 17th day of October, 2023, **WILLIAM HOLTON** ("Assignor"), hereby assigns to **CLICK PROFIT, LLC,** a Florida limited liability company, ("Assignee" or "Company"), all of his outstanding membership ownership interest in the Company.  At the time of this transfer, Assignor is the owner of thirty-three and 33/100 percent (33.33%) of the outstanding membership interests in the Company.

**WITNESSETH:** For and in consideration of $10.00, the receipt and sufficiency of which is acknowledged, Assignor hereby conveys all of his membership interest in the Company to Assignee.

**SIGNED AND DELIVERED** effective on the above date.

By: *William Holton*          2023-10-25
_____
**WILLIAM HOLTON**

# Exhibit G



L2200000048666

(Requestor's Name)

(Address)

(Address)

(City/State/Zip/Phone #)

☐ PICK-UP    ☐ WAIT    ☐ MAIL

(Business Entity Name)

(Document Number)

Certified Copies _____    Certificates of Status _____

Special Instructions to Filing Officer:

Office Use Only



100379572701

12/08/21--01016--002   **150.00



**T. SCOTT**

FEB 09 2022



**FLORIDA DEPARTMENT OF STATE**
Division of Corporations

January 31, 2022

RYAN J. MITTAUER, ESQ.
THE LILES FIRM, P.A.
50 NORTH LAURA STREET, SUITE 1200
JACKSONVILLE, FL 32202

SUBJECT: CLICK PROFITS, LLC
Ref. Number: W21000157978

We have received your document for CLICK PROFITS, LLC and your check(s) totaling $150.00. However, the enclosed document has not been filed and is being returned for the following correction(s):

Deleware llc can only convert to Florida.

Please return the corrected original and one copy of your document, along with a copy of this letter, within 60 days or your filing will be considered abandoned.

If you have any questions concerning the filing of your document, please call (850) 245-6052.

Tyrone Scott
Regulatory Specialist II
New Filings Section

Letter Number: 122A00002417

## COVER LETTER

TO:   New Filing Section
      Division of Corporations

SUBJECT: Click Profit, LLC
_____
         (Name of Resulting Florida Limited Company)

The enclosed Articles of Conversion, Articles of Organization, and fees are submitted to convert an "Other Business Entity" into a "Florida Limited Liability Company" in accordance with s. 605.1045, F.S.

Please return all correspondence concerning this matter to:

Ryan J. Mittauer
_____
              (Contact Person)

The Liles Firm, P.A.
_____
              (Firm/Company)

50 North Laura Street, Suite 1200
_____
              (Address)

Jacksonville, Florida 32202
_____
         (City, State and Zip Code)

rmittauer@thelilesfirm.com
_____
  E-mail Address: (to be used for future annual report notifications)

For further information concerning this matter, please call:

Ryan J. Mittauer                       at ( 904    ) 634-1100
_____
     (Name of Contact Person)        (Area Code)   (Daytime Telephone Number)

Enclosed is a check for the following amount: (All checks processed by this office must be payable in US dollars and drawn on a bank located in the United States)

■ $150.00 Filing Fees      ☐ $155.00 Filing Fees    ☐ $180.00 Filing Fees    ☐ $185.00 Filing Fees,
($25 for Conversion        and Certificate of        and Certified Copy       Certified Copy, and
& $125 for Articles        Status                                             Certificate of Status
of Organization)

        **Mailing Address:**                    **Street Address:**
        New Filing Section                      New Filing Section
        Division of Corporations                Division of Corporations
        P.O. Box 6327                           The Centre of Tallahassee
        Tallahassee, FL 32314                   2415 N. Monroe Street, Suite 810
                                                Tallahassee, FL 32303

INHS11 (7/17)

**Articles of Conversion**
For
**"Other Business Entity"**
Into
**Florida Limited Liability Company**

The Articles of Conversion <u>and attached Articles of Organization</u> are submitted to convert the following **"Other Business Entity" into a Florida Limited Liability Company** in accordance with s.605.1045, Florida Statutes.

1. The name of the "Other Business Entity" immediately prior to the filing of the Articles of Conversion is:

Click Profit, LLC

                         (Enter Name of Other Business Entity)

                Limited Liability Company
2. The "Other Business Entity" is a _____
            (Enter entity type. Example: corporation, limited partnership, general partnership, common law or business trust, etc.)

                           Delaware
First organized, formed or incorporated under the laws of _____
                          (Enter state, or if a non-U.S. entity, the name of the country)

    04/29/2021
on _____.
   (date of organization, formation or incorporation)

3. The name of the Florida Limited Liability Company as set forth in the **attached Articles of Organization**:

Click Profit, LLC
_____
           (Enter Name of Florida Limited Liability Company)

4. If not effective on the date of filing, enter the effective date:_____.
**(The effective date: Cannot be prior to date of receipt or filed date nor more than 90 calendar days after the date this document is filed by the Florida Department of State.)**
**Note:** If the date inserted in this block does not meet the applicable statutory filing requirements, this date will not be listed as the document's effective date on the Department of State's records.

5. The plan of conversion has been approved in accordance with all applicable statutes.

6. The "Converted or Other Business Entity" has agreed to pay any members having appraisal rights the amount to which such members are entitled under ss. 605.1006 and 605.1061-605.1072, F.S.

Signed this _January_ day of _7_ _____ 20 _22_ _____

## Signature of Authorized Representative of Limited Liability Company:

Signature of Authorized Representative: _____

Printed Name: Ryan J. Mittauer, Esq. _____ Title: Authorized Representative _____

## Signature(s) on behalf of Other Business Entity: [See below for required signature(s)]

Signature: _____

Printed Name: Ryan J. Mittauer, Esq. _____ Title: Authorized Representative _____

Signature: _____

Printed Name: _____ Title: _____

Signature: _____

Printed Name: _____ Title: _____

Signature: _____

Printed Name: _____ Title: _____

Signature: _____

Printed Name: _____ Title: _____

Signature: _____

Printed Name: _____ Title: _____

**If Florida Corporation:**
Signature of Chairman, Vice Chairman, Director, or Officer.
If Directors or Officers have not been selected, an Incorporator must sign.

**If Florida General Partnership or Limited Liability Partnership:**
Signature of one General Partner.

**If Florida Limited Partnership or Limited Liability Limited Partnership:**
Signatures of **ALL** General Partners.

**All others:**
Signature of an authorized person.

**Fees:**

| | |
|---|---|
| Articles of Conversion: | $25.00 |
| Fees for Florida Articles of Organization: | $125.00 |
| Certified Copy: | $30.00 (Optional) |
| Certificate of Status: | $5.00 (Optional) |

## ARTICLES OF ORGANIZATION FOR FLORIDA LIMITED LIABILITY COMPANY

**ARTICLE I - Name:**
The name of the Limited Liability Company is:

Click Profit, LLC
_____
(Must contain the words "Limited Liability Company," "L.L.C.," or "LLC.")

**ARTICLE II - Address:**
The mailing address and street address of the principal office of the Limited Liability Company is:

| **Principal Office Address:** | **Mailing Address:** |
|---|---|
| 394 Lowell Street, Suite 18 | 394 Lowell Street, Suite 18 |
| Lexington, Massachusetts 02420 | Lexington, Massachusetts 02420 |

**ARTICLE III - Registered Agent, Registered Office, & Registered Agent's Signature:**
(The Limited Liability Company cannot serve as its own Registered Agent. You must designate an individual or another business entity with an active Florida registration.)

The name and the Florida street address of the registered agent are:

The Liles Firm, P.A
_____
Name

50 North Laura Street, Suite 1200
_____
Florida street address (P.O. Box **NOT** acceptable)

Jacksonville                               FL  32202
_____
City                                      Zip

*Having been named as registered agent and to accept service of process for the above stated limited liability company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relating to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent as provided for in Chapter 605, F.S.*

_____
Registered Agent's Signature (REQUIRED)

**(CONTINUED)**

**ARTICLE IV-**
The name and address of each person authorized to manage and control the Limited Liability Company:

| Title: | Name and Address: |
|---|---|
| "AMBR" = Authorized Member<br>"MGR" = Manager<br>MGR | Craig Emslie |
| | 1800 North Bayshore Drive, Apt. 3803 |
| | Miami, Florida 33132 |
| MGR | |
| | Patrick Mcgeoghan |
| | 394 Lowell Street, Suite 18 |
| MGR | Lexington, Massachusetts 02420 |
| | William Holton |
| | 411 Abbe Road |
| | Elyria, Ohio 44035 |

(Use attachment if necessary)

**ARTICLE V:** Effective date, if other than the date of filing: _____ . (OPTIONAL)
(If an effective date is listed, the date must be specific and cannot be more than five business days prior to or 90 calendar days after the date of filing.)

**ARTICLE VI:** Other provisions, if any.

_____

_____

_____

**REQUIRED SIGNATURE:** _____
Signature of a member or an authorized representative

(In accordance with section 605.0205 (3), Florida Statutes, the execution of this document constitutes an affirmation under the penalties of perjury that the facts stated herein are true. I am aware that any false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S.)

Ryan J. Mittauer, Authorized Representative
Typed or printed name of signee

**Filing Fees:**
$125.00 Filing Fee for Articles of Organization and Designation of Registered Agent
$ 30.00 Certified Copy (Optional)          $   5.00 Certificate of Status (Optional)

**2023 FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT**

DOCUMENT# L22000048666

**FILED**
**Jan 10, 2023**
**Secretary of State**
**4727805451CC**

**Entity Name:** CLICK PROFIT, LLC

**Current Principal  Place of Business:**

394 LOWELL STREET, SUITE 18
LEXINGTON,  MA  02420

**Current Mailing Address:**

1800 N. BAYSHORE DR.
SUITE 3903
MIAMI,  FL  33132  US

**FEI Number: 86-3682301**                        **Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

THE LILES FIRM, P.A.
50 NORTH LAURA STREET, SUITE 1200
JACKSONVILLE, FL  32202  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

   Electronic Signature of Registered Agent                                          Date

**Authorized Person(s) Detail :**

| Title | MGR | | Title | MGR |
|---|---|---|---|---|
| Name | EMSLIE, CRAIG | | Name | MEGEOGHAN, PATRICK |
| Address | 1800 NORTH BAYSHORE DRIVE, APT. 3803 | | Address | 394 LOWELL STREET, SUITE 18 |
| City-State-Zip: | MIAMI FL  33132 | | City-State-Zip: | LEXINGTON  MA  02420 |

| Title | MGR |
|---|---|
| Name | HOLTON, WILLIAM |
| Address | 411 ABBE ROAD |
| City-State-Zip: | ELYRIA  OH  44035 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: CRAIG EMSLIE                              MANAGING MEMBER          01/10/2023

   Electronic Signature of Signing Authorized Person(s) Detail                              Date

**2024 FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT**

DOCUMENT# L22000048666

**Entity Name:** CLICK PROFIT, LLC

**FILED**

**Jan 30, 2024**
**Secretary of State**
**0961245219CC**

**Current Principal  Place of Business:**

333 SE 2ND AVE
 2000
MIAMI,  FL  33131

**Current Mailing Address:**

333 SE 2ND AVE
 2000
MIAMI,  FL  33131  US

**FEI Number: 86-3682301**                              **Certificate of Status Desired:** Yes

**Name and Address of Current Registered Agent:**

THE LILES FIRM, P.A.
50 NORTH LAURA STREET, SUITE 1200
JACKSONVILLE, FL  32202  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE:

Electronic Signature of Registered Agent                                                                      Date

**Authorized Person(s) Detail :**

| Title | MGR | Title | MGR |
|---|---|---|---|
| Name | SA AUTOMATION ENTERPRISE LLC | Name | M23 HOLDINGS, LLC |
| Address | 3500 SOUTH DUPONT HIGHWAY HI-101 | Address | 3500 S DUPONT HIGHWAY |
| City-State-Zip: | DOVER  DE  19901 | City-State-Zip: | DOVER  DE  19901 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: CRAIG EMSLIE                          CO-FOUNDER                    01/30/2024

Electronic Signature of Signing Authorized Person(s) Detail                                          Date

# 2025 FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT

DOCUMENT# L22000048666

**FILED**

**Feb 13, 2025**
**Secretary of State**
**0860515029CC**

**Entity Name:** CLICK PROFIT, LLC

**Current Principal  Place of Business:**

333 SE 2ND AVE
 2000
MIAMI, FL  33131

**Current Mailing Address:**

333 SE 2ND AVE
 2000
MIAMI, FL  33131  US

**FEI Number: 86-3682301**

**Certificate of Status Desired:**  No

**Name and Address of Current Registered Agent:**

THE LILES FIRM, P.A.
50 NORTH LAURA STREET, SUITE 1200
JACKSONVILLE, FL  32202  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

Electronic Signature of Registered Agent                                                                                      Date

## Authorized Person(s) Detail :

| | | | | |
|---|---|---|---|---|
| Title | MGR | | Title | MGR |
| Name | SA AUTOMATION ENTERPRISE LLC | | Name | M23 HOLDINGS, LLC |
| Address | 3500 SOUTH DUPONT HIGHWAY HI-101 | | Address | 3500 S DUPONT HIGHWAY |
| City-State-Zip: | DOVER  DE  19901 | | City-State-Zip: | DOVER  DE  19901 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: CRAIG EMSLIE                                    CO-FOUNDER                    02/13/2025

Electronic Signature of Signing Authorized Person(s) Detail                                                                    Date