UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-20973-LEIBOWITZ/TORRES

FEDERAL TRADE COMMISSION,

    Plaintiff,
v.

CLICK PROFIT, LLC, *et al.*,

    Defendants.
_____/

**DEFENDANTS JASON MASRI'S, AUTOMATION INDUSTRIES LLC'S,
AND CLICK PROFIT DISTRIBUTION, LLC'S PARTIALLY UNOPPOSED
MOTION TO MODIFY TEMPORARY RESTRAINING ORDER**

Pursuant to Federal Rule of Civil Procedure 65(b)(4), Defendants Jason Masri, Automation Industries LLC, and Click Profit Distribution, LLC (collectively, "Defendants") file this partially unopposed Motion and move to modify the temporary restraining order ("TRO") entered against Defendants on March 5, 2025. ECF No. 15; ECF No. 34; ECF No. 45. In support thereof, Defendants state as follows:

**INTRODUCTION**

In this action, the Court entered a temporary restraining order (the "TRO Order") that temporarily restrains and enjoins Defendants from, *inter alia*, conducting numerous business activities and using and transferring certain assets. ECF No. 15. The TRO Order imposes a wide-ranging asset freeze on Defendants, which this Court has the discretion to modify. Accordingly, and pursuant to the Court's March 18, 2025 Order, ECF No. 49, Defendants move to modify the TRO. *First*, this Motion seeks the release of $6,500.00 in monthly funds for Defendant Jason Masri's reasonable living expenses, and the FTC supports the relief requested. *Second*, this Motion seeks to modify the TRO to unfreeze the Chase Bank account of a telehealth startup whose business

is unrelated to the Parties and claims at issue, once the existing balance has been transferred to the Receiver. The FTC also supports the relief requested. And *third*, this Motion seeks to unfreeze the Chase Bank account belonging to Mr. Masri's parents, who have no connection to the businesses and claims at issue. The FTC does not oppose this request, pending confirmation that Mr. Masri is only listed on the account as a beneficiary. As discussed herein, there is good cause for the Court to modify the TRO on each of these grounds.

## BACKGROUND AND STATEMENT OF FACTS

1. On March 3, 2025, the Federal Trade Commission ("FTC") initiated this action and filed the nine-count Complaint against Defendants for violations of section 5(a) of the FTC Act, 15 U.S.C. § 45(a); the FTC's Business Opportunity Rule and Impersonation Rule, 16 C.F.R. §§ 437, 461; and the Consumer Review Fairness Act, 15 U.S.C. § 45(b). ECF No. 1.

2. The Complaint alleges, *inter alia*, that Defendants "ma[de] false or unsubstantiated claims about earnings, their affiliation with well-known brands, and their use of artificial intelligence," "violat[ed] multiple trade regulation rule provisions in the selling of Defendants' products or services," and "us[ed] threats and non-disparagement clauses to discourage purchasers from publishing truthful reviews about Defendants and their products or services." ECF No. 15 at 3–4.

3. On the same day, the FTC filed a sealed *ex parte* motion for temporary restraining order with asset freeze, appointment of a temporary receiver, and other equitable relief, and order to show cause why a preliminary injunction should not issue (the "TRO Motion"). ECF No. 5.

4. On March 5, 2025, the Court entered the *ex parte* TRO Order, which temporarily restrains and enjoins Defendants from conducting numerous business activities, releasing customer information, using and transferring certain assets, maintaining foreign assets, and

disposing of business-related documents, and appointed a temporary receiver (the "Receiver"). ECF No. 15.

5. Although the TRO prohibits Defendants from conducting certain business activities, it does not preclude them from "creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation," so long as they "first provid[e] Plaintiff's counsel and the Receiver with a written statement" disclosing certain information. *Id.* at 18.

6. The TRO is presently set to expire on April 9, 2025, following a Show Cause Hearing on the same day, at which Defendants shall appear to show cause as to why the Court should not enter a preliminary injunction in this action.[1] *Id.* at 35; ECF No. 34; ECF No. 45.

7. Notably, the TRO Order imposes an asset freeze on Defendants (the "Asset Freeze"), which:

    a. Restrains and enjoins Defendants from transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of an assets that are: (i) owned or controlled, directly or indirectly, by any Defendant; (ii) held, in part or in whole, for the benefit of any Defendant; (iii) in the actual or constructive possession of any Defendant; or (iv) owned or controlled by, in the actual or constructive possession

---

[1] Following the reassignment of this action, *see* ECF No. 30, the Court has reset deadlines associated with the TRO after Defendants Jason Masri, Craig Emslie, Patrick McGeoghean, and their respective entities filed the Expedited Joint Motion to Extend TRO and Amend Related Deadlines and Hearings. *See* ECF No. 45.

    of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Defendant;

b. Temporarily restrains and enjoins Defendants from opening or causing to be opened any safe deposit boxes, commercial mailboxes, or storage facilities without the Receiver's consent; incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or of which any Defendant is an officer, director, member, or manager; or cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant;

c. Extends to "all Assets of Defendants as of the time [the TRO] is entered" and "Assets obtained by Defendants after this Order is entered if those Assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order"; *and*

d. Imposes duties on any financial or brokerage institution, credit card processor, payment processor, merchant bank, and other entities or persons who hold, control, or maintain custody of any assets and documents owned or controlled by any Defendant to hold, preserve, and retain within their control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such assets or documents. ECF No. 15 at 11–13.

Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue ▪ Suite 2600 ▪ Miami, Florida 33131 ▪ www.gsgpa.com

8. In practice, the Asset Freeze has prevented Defendant Jason Masri from accessing any of his banking accounts that would allow him to cover necessary personal expenses, including but not limited to, food, health insurance, rent and mortgage payments, and associated fees. Mr. Masri also cannot access any funds to pay for legal expenses, including attorneys' fees.[2]

9. Consequently, Mr. Masri currently cannot fulfill his obligation to pay rent at the property he co-owns with his father, who has no business affiliation or association with any of the Defendants. The father is the mortgage holder of the property. Through the rent payment, Mr. Masri is responsible for covering the full mortgage of the property. He also pays associated household fees like utilities, lawn care, and pest control.

10. Concurrently, the Asset Freeze has been imposed on a Chase Bank account held by Mr. Masri's parents, blocking their access to the account. Mr. Masri has no control or signatory authority over the account.

11. Without access to their son's rent payments or their Chase Bank account, Mr. Masri's retired parents—including his disabled father—cannot afford to pay certain recurring expenses.

12. The Asset Freeze has also affected the operations of Mr. Masri's other businesses, which are not connected to the claims alleged in the Complaint. Specifically, Mr. Masri comanages ZYVYO Pharmaceuticals, LLC ("ZYVYO"), a telehealth startup, with a nonparty business partner. Neither ZYVYO nor this business partner are named in the TRO, nor are they related to the businesses at issue or the claims set forth in the TRO. Since the TRO's entry, ZYVYO's Chase

---

[2] The Parties and the Receiver have agreed that certain funds in possession of counsel for the Defendant may properly be applied toward the Defendants' attorneys' fees. The Parties and Receiver further agreed that the Defendants have not waived any rights to seek further reasonable attorneys' fees and may seek modification of the TRO and any other injunction in the future, to seek such fees.

Bank account has been frozen, preventing the business from operating. Without access to this account, ZYVYO cannot operate.

13. Separately, Mr. Masri presently lacks access to files and records that he believes would be essential to defend himself and his entities from a preliminary injunction and throughout this litigation.[3] His lack of access to these records has also affected his ability to efficiently answer certain questions fielded by the FTC and/or the Receiver regarding his companies' operations.

14. Nevertheless, Defendants have furnished and continue to furnish the FTC and the Receiver with all of the information they have requested, including voluminous financial disclosures produced on March 18, 2025. Defendants have prepared these responses to the best of their abilities, given that they presently lack access to company records that may refresh their recollection.

15. During a March 11, 2025 videoconference regarding the TRO, counsel for Defendants informed the FTC and the Receiver about concerns over (i) the individual Defendants' lack of access to funds to cover necessary living and household expenses; (ii) the inability of unrelated entities and individuals to access their funds; and (iii) Defendants' inability to access files and records—even on a read-only basis.

---

[3] Defendants initially intended to include in this Motion a request that the Court order the FTC and/or the Receiver to provide them with read-only access to company files and records, so that they may prepare their defense in advance of the Show Cause Hearing on April 9, 2025. Defendants believe that the TRO entitles them to such access. However, upon conferring with the FTC and the Receiver on March 21, 2025, it is Defendants' understanding that (1) the FTC does not oppose providing Defendants with read-only access; and (2) the Receiver is in the process of figuring out how to provide such access to various accounts. Accordingly, Defendants have not moved for read-only access in this Motion. However, should circumstances change, Defendants reserve their right to amend or supplement this Motion, or move for further modification of the TRO, on these grounds.

16. During a March 13, 2025 telephone conference with the Court, counsel for Defendants raised some of these issues and reserved their right to move to modify the TRO.

17. Thereafter, on March 18, 2025, the Court held a telephone conference, set a briefing schedule for all motions to modify the TRO, and scheduled a March 26, 2025 hearing on any such motions. *See* ECF No. 48; ECF No. 49.

18. The Parties have conferred, both via email on March 20 and 21, 2025, and subsequently via a video conference that included the Receiver on March 21, 2025. As discussed herein, this Motion is partially unopposed.

19. Based on the foregoing, and as discussed herein, Defendants believe there is good cause to modify the TRO to release certain funds and unfreeze certain assets and thus file the instant Motion.

**STANDARD**

In entering a temporary restraining order, a district court "may order preliminary relief, including an asset freeze, that may be needed to make permanent relief possible." *F.T.C. v. Gem Merch. Corp.*, 87 F.3d 466, 469 (11th Cir. 1996). "Factors for consideration include preserving the funds for defrauded victims, maintaining fairness in the legal proceedings, and a defendant's unclean hands after entry of the asset freeze." *F.T.C. v. Roca Labs, Inc.*, 2017 WL 11002307, at *1 (M.D. Fla. Apr. 7, 2017) (citations omitted). Generally, to obtain an asset freeze, the FTC must establish "a reasonable approximation of a defendant's [alleged] ill-gotten gains" that the Court could access in the event of disgorgement. *S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir. 2005) (citing *S.E.C. v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004)).

However, the "power to order disgorgement extends only to the amount with interest by which the defendant profited from [their] wrongdoing," as any "further sum would constitute a

penalty assessment." *ETS Payphones, Inc.*, 408 F.3d at 735 (cleaned up). Furthermore, "[t]he release of assets from a TRO for living expenses and attorneys' fees is within the sound discretion of the court." *Absolute Activist Value Master Fund Ltd. v. Devine*, 2015 WL 12839169, at *1 (M.D. Fla. Aug. 24, 2015) (citation omitted); *see also Roca Labs, Inc.*, 2017 WL 11002307, at *1 (citation omitted) (same). Accordingly, district courts have the authority to modify a TRO "to release frozen personal assets, or lower the amount frozen," *S.E.C. v. Quiros*, 2016 WL 3032925, at *1 (S.D. Fla. May 27, 2016) (citations omitted), as well as to modify a TRO and unfreeze the assets of unrelated individuals and entities. *See F.T.C. v. Vylah Tec LLC*, 727 F. App'x 998, 1002 (11th Cir. 2018). Under Federal Rule of Civil Procedure 65(b)(4), "On 2 days' notice to the party who obtained the order without notice—or on shorter notice set by the court—the adverse party may appear and move to dissolve or modify [a temporary restraining] order. The court must then hear and decide the motion as promptly as justice requires."[4]

## MEMORANDUM OF LAW

I. **Defendants and the FTC agree that good cause exists to modify the TRO to release $6,500.00 for Mr. Masri's monthly living expenses for the duration of the Asset Freeze.**

"When addressing requests for living expenses, courts consider evidence of the defendant's overall assets or income, and make a determination as to the defendant's necessary living expenses," eschewing "luxuries" in favor of "necessities." *Devine*, 2015 WL 12839169, at *1 (first citing *F.T.C. v. USA Fin., LLC*, 2008 WL 3165930, at *3 (M.D. Fla. Aug. 6, 2008), and then citing *S.E.C. v. Gonzalez de Castilla*, 170 F. Supp. 2d 427, 429 (S.D.N.Y. 2001)).

---

[4] On March 17, 2025, Defendants served the FTC with a notice of their intent to move to modify the TRO.

Here, Mr. Masri and the FTC have agreed to the release of **$6,500.00** for monthly living expenses for the duration of the Asset Freeze. The requested amount covers necessary expenses, including for housing, utilities (electricity, trash, water, and sewage), food, healthcare, internet and cellphone service, and hygiene.[5] *Id.* Mr. Masri's livelihood comes entirely from the businesses and unrelated entities whose assets the TRO froze. Therefore, he presently has no other sources of income, lacks access to checking, savings, and brokerage accounts, and does not have any significant cash on hand that could be used to cover necessary expenses. Absent the release of funds for his living expenses, Mr. Masri will not be able to afford food, rent, health insurance, and other necessities, and will continue to miss payments, which could potentially cause default and affect his creditworthiness moving forward.

Furthermore, the living expenses Mr. Masri has requested are reasonable, necessary, and conservative. The vast majority of the requested expenses would cover Mr. Masri's payments for housing and food. As to housing, Mr. Masri's primary residence is at a property that he co-owns with his father. Mr. Masri has been responsible for paying $4,100.00 per month toward the mortgage on that home, in addition to utilities, internet service, lawn care, and pest control at the property ($344.24). Mr. Masri's father is disabled and retired, and he cannot cover the mortgage without his son's contribution. The TRO should not prejudice Mr. Masri's father, a nonparty with

---

[5] Mr. Masri has informed the FTC and the Receiver about recurring expenses for mortgages on five properties he owns, for a second car that he finances, and for associated fees (*e.g.*, condominium fees, car insurance). However, this Motion's request for the release of $6,500.00 in monthly living expenses does ***not*** include these recurring expenses. Instead, it is Defendants' understanding from speaking with the Receiver and conferring with the FTC that the Receiver intends to protect these assets from default, foreclosure, and/or seizure. If that proves not to be the case, Defendants reserve the right to amend or supplement this Motion and seek further modification of the TRO and any future injunction, to ensure that these assets remain protected for the duration of the TRO and the pendency of this and any related action.

no ties to the businesses and claims at issue. Mr. Masri's request also includes an allowance for monthly food expenses, health insurance, cellphone service, and miscellaneous necessities.

None of Mr. Masri's requests consist of "luxuries" that would warrant denial. *See, e.g.*, *Devine*, 2015 WL 12839169, at *2 (rejecting defendant's request for "approximately $13,000 per month to pay the salaries of the individuals responsible for maintaining her eight properties, most of which can fairly be described as opulent"), *S.E.C. v. Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d 427, 430 (S.D.N.Y. 2001) (refusing to release funds for monthly budget that included "$1,800 for a nanny, housekeeper, handy-man, and nurse"). Nor are these requests for "unrepresentatively high bills." *S.E.C. v. Coates*, 1994 WL 455558, at *2 (S.D.N.Y. Aug. 23, 1994) (denying request to release funds for lawn care "alleged to cost $583 a month"). Most importantly, Mr. Masri's reasonable request for the release of $6,500.00 for monthly living expenses will *not* materially dissipate any assets that the Court could access for consumer redress. *See ETS Payphones, Inc.*, 408 F.3d at 735. Accordingly, there is good cause to modify the TRO and grant Mr. Masri's **unopposed** request for living expenses.

II. **Defendants and the FTC agree that good cause exists to modify the TRO to unfreeze the account of an unrelated telehealth startup so that it may restart operations, once the current balance is transferred to the Receiver.**

As discussed, *see supra* ¶ 12, ZYVYO is a limited liability company and telehealth startup that Mr. Masri comanages with a nonparty business partner. Defendants contend that neither ZYVYO nor Mr. Masri's nonparty business partner have any connection to or affiliation with the businesses at issue. Further, nowhere in the TRO Motion did the FTC allege that ZYVYO or the nonparty business partner have engaged in or are likely to engage in acts or practices that violate the FTC Act (or any rules promulgated thereunder) or the Consumer Review Fairness Act. *See Vylah Tec LLC*, 727 F. App'x at 1002 (reversing freeze on nonparty's assets due to district court's

failure to make sufficient factual findings to support freezing those assets). ZYVYO was in the process of securing online advertising to begin acquiring customers when the Court entered the TRO. Since then, ZYVYO has lost access to its Chase Bank account and cannot operate its business. Mr. Masri acknowledges that Defendant Automation Industries LLC supplied ZYVYO with $10,000.00 in seed money to accelerate its business back in September 2024, while his business partner contributed additional funding.

After conferring, Defendants and the FTC have agreed to a course of action for the Court to unfreeze ZYVYO's Chase Bank account, after the FTC and/or the Receiver arrange for the existing balance to be transferred to the Receiver. This plan would allow ZYVYO to restart its business operations once the FTC and/or the Receiver transfer the existing balance. It would also provide an option for Mr. Masri—who pursuant to the TRO may work and earn income from businesses unrelated to the claims at issue upon approval—to begin working again. *See* ECF No. 15 at 18. At the same time, it would protect alleged ill-gotten gains from dissipation. Accordingly, there is good cause to modify the TRO and grant Mr. Masri's **unopposed** request to unfreeze ZYVYO Pharmaceuticals, LLC's Chase Bank account once the existing balance has been transferred to the Receiver.

  III.   **Good cause exists to modify the TRO to unfreeze the Chase Bank account of Defendant Jason Masri's retired parents, which is completely unrelated to the claims at issue.**

Since the Court entered the TRO on March 5, 2025, Mr. Masri's parents have been unable to access their Chase Bank account. As an initial matter, Defendants contend that Mr. Masri's parents have no connection to the businesses and claims at issue. Although Mr. Masri is listed on the account as a beneficiary, he has no control or signatory authority over the account. He cannot make deposits, withdrawals, or transfers; seek advances; or take advantage of other account

benefits. Therefore, the FTC has agreed to release Mr. Masri's parents' Chase account from the Asset Freeze, pending confirmation that he is only listed on the account as a beneficiary.[6]

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court modify the TRO to release funds for reasonable living expenses and to unfreeze assets unrelated to the TRO.[7] A proposed order granting this Motion is attached as **Exhibit A**.

## LOCAL RULE 7.1(A)(3) CERTIFICATE OF CONFERRAL

Pursuant to Southern District of Florida Local Rule 7.1(a)(3), Defendants certify that they conferred with counsel of record for the FTC before filing the instant Motion. On March 17, 2025, pursuant to Federal Rule of Civil Procedure Rule 65(b)(4), Defendants served a Notice of Intent to File Motion to Modify TRO on the FTC. Thereafter, the Parties conferred via email on March 20 and 21, 2025, and subsequently via videoconference with the Receiver on March 21, 2025. The FTC has agreed to the requested relief as described herein but does not believe that a modification of the TRO is necessary to execute Defendants' requests.

---

[6] As of the date of this Motion, Mr. Masri has shared financial documents with the FTC and the Receiver showing that he is listed as the beneficiary on the account and that his parents are the owners of the account. Accordingly, Defendants are awaiting confirmation from the FTC about whether these documents are sufficient to support unfreezing the account.

[7] Initially, Defendants intended to file the instant Motion as an expedited motion pursuant to Local Rule 7.1(d). However, on March 18, 2025, the Court held a status conference at which it created a consolidated briefing schedule for any motions to modify or dissolve the TRO. ECF No. 48; ECF No. 49. Accordingly, Defendants have filed the instant Motion without any 'expedited' designation.

Dated: March 21, 2025						Respectfully Submitted,

*/s/ Barbara R. Llanes*
BARBARA R. LLANES
Florida Bar No. 1032727
bllanes@gsgpa.com
JOAN M. SILVERSTEIN
Florida Bar No. 0997330
jsilverstein@gsgpa.com
SHANE GRANNUM
Florida Bar No. 1055050
sgrannum@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

*Counsel for Jason Masri, Automation Industrie LLC, and Click Profit Distribution, LLC*