IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-20973-LEIBOWITZ

**FEDERAL TRADE COMMISSION**,

    Plaintiff,

v.

**CLICK PROFIT, LLC, et al.**,

    Defendants.

### DEFENDANTS CRAIG EMSLIE'S AND PATRICK MCGEOGHEAN'S PARTIALLY UNOPPOSED MOTION TO MODIFY THE TEMPORARY RESTRAINING ORDER

Defendants Craig Emslie ("Emslie") and Patrick McGeoghean ("McGeoghean") (collectively "Defendants"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 65(b)(4), hereby move this Court for an Order modifying the *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("TRO") [ECF No. 15] for the limited purposes of: (1) releasing funds to Defendants to pay reasonable and necessary living expenses (agreed to by the FTC as discussed below); (2) releasing funds to pay Defendants' reasonable attorneys' fees (partially agreed to by the FTC as discussed below); (3) granting Defendants and their counsel read-only access to operational software and emails to prepare a defense (agreed to by the FTC as discussed below); and (4) allowing Defendant Emslie to operate Express Ecom LLC and unfreeze the associated bank account (the FTC agreed as discussed below). In further support, Defendants state as follows:

80624731;1

## I. INTRODUCTION

Plaintiff, the Federal Trade Commission ("FTC"), obtained an *ex parte* TRO freezing all of Defendants' assets based on allegations that Defendants participated in a purported online scheme related to their e-commerce websites. The TRO imposed immediate liability on Defendants by freezing every dollar and asset held individually and in any and all of their business entities and simultaneously preventing Defendants from accessing any of their online business records, including their operational software. The broad TRO deprives Defendants of the ability to defend themselves against the significant allegations in the FTC's Complaint, much of which is overstated. Equity, due process, and the law require that Defendants be granted limited relief from the TRO so that they can pay their necessary living expenses and pay their attorneys' fees and costs to defend against the FTC's serious allegations. The all-encompassing nature of the TRO also prohibits Emslie from operating Express Ecom LLC, a separate and unrelated entity to Click Profit LLC, the other named defendants and/or any of the alleged wrongful conduct set forth in the Complaint. The TRO froze the bank account and credit card utilized solely for Express Ecom, prejudicing that business as well as Emslie who is thereby precluded from his right to alternative employment. Given the TRO, Express Ecom has not been able to satisfy its existing financial obligations, including payment for pallets of products that have already been ordered, manufactured and are ready for shipment. Consequently, the TRO may have the effect of destroying an unconnected business operation.

## II. BACKGROUND

On March 3, 2025, the FTC initiated this action by filing a Complaint under seal against Defendants and their corporate co-defendants. [ECF No. 1]. In its Complaint, the FTC alleges that Defendants violated Section 5(a) of the FTC Act, 15 § U.S.C. 45(a), the Trade Regulation Rule

entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities" ("Business Opportunity Rule"), 16 C.F.R. pt. 437, the Consumer Review Fairness Act ("CRFA"), 15 U.S.C. § 45(b), and the Trade Regulation Rule entitled "Impersonation of Government and Businesses" ("Impersonation Rule"), 16 C.F.R. pt. 461. The same day, the FTC moved *ex parte*, under seal, for a TRO, including a total asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Defendants pursuant to Federal Rule of Civil Procedure 65(b). [ECF No. 5].

Two days after the FTC initiated this action, the Court entered an Order granting the FTC's Motion. [ECF No. 15]. The total freeze on all Defendants' assets, coupled with their lack of access to any and all company records and software, hindered their ability to prepare their defense and respond to the FTC's and Receiver's ongoing and numerous requests for information. The asset freeze has also precluded Defendants from accessing or utilizing any of their funds to cover necessary personal expenses, including rent, food, health insurance and other essentials. It also precludes them from accessing their funds to pay for their legal expenses.

Good cause exists for this Court to exercise its discretion to modify the TRO to adjust the scope of the asset freeze to pay for Defendants' necessary living expenses in the amounts agreed by the FTC ($5,000/month for Emslie for a period of three months; and $7,000 for one month, followed by $6,500 for two months for McGeoghean) and reasonable attorneys' fees and costs (to which the FTC objects at this point, other than the release of $10,000 to the undersigned firm). Defendants also request that this Court grant Defendants' request for read-only access to their operational software and emails, to which the FTC has agreed. Finally, Defendant Emslie requests that he be permitted to operate Express Ecom LLC, including access to the Express Ecom bank account and associated credit card as Express Ecom is unconnected to Click Profit, LLC and/or

3

any of the alleged wrongdoing. The FTC has agreed to allow Emslie to operate Express Ecom and access the bank account, following the Receiver's transfer of all funds in that account to the Receiver.

### III. MEMORANDUM OF LAW

This Court maintains the inherent authority, discretion, and power to modify the TRO and asset freeze. Fed. R. Civ. P. 65(b)(4); *SEC v. Quiros et al.*, 2016 WL 3032925, at *1 (S.D. Fla. May 27, 2016) ("The Court has both the authority to implement an asset freeze and 'to release frozen personal assets, or lower the amount frozen.'") (citation omitted). To determine whether modifying the TRO is appropriate, this Court should weigh the disadvantages of the effect of the asset freeze against the needs and considerations of the Defendants' requests. *Id.* at *2 (reasoning that a defendant should be able to pay reasonable living expenses and counsel).

District Courts can and often do modify an asset freeze to allow defendants to pay reasonable living expenses and attorneys' fees during the pendency of an enforcement action. *See, e.g., FTC v. U.S. Mortgage Funding, Inc.* 2011 WL 810790, at *8 (S.D. Fla. Mar. 1, 2011) (ordering the receiver to make disbursements for the payment of defendant's monthly necessities, including but not limited to, house payments, utilities, transportation, tuition, groceries, and medical costs for defendant and his family); *see also SEC v. Pinez*, 989 F. Supp. 325 (D. Mass 1997) (modifying a TRO asset freeze to allow for Defendants' necessary and reasonable living expenses and attorney's fees).

**A.   THE SCOPE OF THE ASSET FREEZE SHOULD BE MODIFIED BECAUSE DEFENDANTS HAVE NO ALTERNATE MEANS TO PAY FOR LIVING EXPENSES AND ATTORNEYS' FEES AND COSTS.**

Due to the blanket asset freeze, McGeoghean has zero means or resources to pay his living expenses or attorneys' fees and costs. As for Emslie, aside from his wife's $4,316 monthly take-

home pay, he has no other means by which to pay for necessary living expenses and attorneys' fees. Defendants currently have no alternate sources of income, have disclosed all of their assets, and are not seeking a modification of the TRO to pay for luxuries.[1] The FTC has agreed to release funds to Defendants as follows: $5,000/month for Emslie for a period of three months; and $7,000 for one month, followed by $6,500 for two months for McGeoghean.

Accordingly, Defendants respectfully request that this Court grant a modification to the scope of the asset freeze in order for Defendants to pay for their housing costs, groceries, transportation, health insurance, and utilities.

In addition to seeking a release of frozen assets to pay their necessary living expenses, Defendants also seek to modify the asset freeze in order to release $200,000 to Defendants' attorneys to represent them and their respective corporate entities, in this action. Defendants' attorneys do not have any funds for any of the fees they have expended in representing Defendants since March 6, 2025. Defendants' counsel met and conferred with the FTC counsel who indicated that they agree to the release of $10,000 for attorneys' fees but oppose any additional release of attorneys' fees at this point.

**B.   THE TRO SHOULD BE MODIFIED TO PERMIT DEFENDANTS AND UNDERSIGNED COUNSEL TO OBTAIN READ ONLY ACCESS TO OPERATIONAL SOFTWARE AND EMAILS TO PREPARE A DEFENSE.**

In compliance with the TRO, Defendants produced documents, computers, phones and other electronic storage devices for imaging, copying, and inspection to the Receiver and FTC. Pursuant to the TRO, Defendants have been prohibited from accessing their operational software

---

[1] Following entry and service of the TRO, Defendants mistakenly wired funds from non-frozen account to attorneys (where the funds were held in trust), to prepay rent and two credit card bills. The Receiver and FTC were promptly notified of the mistake, and all funds were returned to the Receiver. As such, the situation has been fully rectified.

and business emails. Moreover, they have been, and remain, unable to access such software and other business communications because the Receiver has changed the passwords. Under this Court's inherent power to modify the TRO, Defendants seek a modification to obtain read-only access to the following operational software, as well as company emails: (1) CRM – GoHighLevel; (2) Click Profit Pandadocs; (3) Airtable; (4) Fingerprint; (5) Coda; (6) Quickbook; and (7) the following email addresses, and associated Google drives for admin@clickprofit.io; Craig@clickprofit.io and Pat@clickprofit.io.

The FTC has advised that the Receiver is in the process of securing read-only access to the operation software. Accordingly, this Court should allow Defendants read-only access to their operational software and emails to prepare a defense.

C. **THE TRO SHOULD BE MODIFIED TO PERMIT EMSLIE'S OPERATION OF EXPRESS ECOM LLC BECAUSE IT IS WHOLLY UNRELATED TO THE ALLEGATIONS IN THE COMPLAINT AND DID NOT ENGAGE IN ANY ALLEGED WRONGDOING.**

Finally, the scope of the TRO warrants modification because it baselessly imposes restraints on Express Ecom LLC, Emslie's personal Amazon store that creates its own products and sells them under their own private labels. Given the TRO, Express Ecom has not been able to satisfy its existing financial obligations, including payment for pallets of products that have already been ordered, manufactured and are ready for shipment. The FTC does not oppose modification of the TRO to release Express Ecom from the TRO, to allow Emslie to operate Express Ecom and to release the bank account associated with Express Ecom, following the Receiver's withdrawal of any funds therein.

Express Ecom LLC has no connection whatsoever to the allegations in the Complaint. Express Ecom LLC was incorporated in Delaware in November 2023 after Emslie purchased it from William Holton. It had been dormant for some number of years at the time Emslie bought it.

6

In contrast to the other Defendant entities, Express Ecom designs and manufactures the products it sells and does not resell other companies' brands and/or products. Express Ecom sells a limited number of products, including ice plunge tubs, ice bath chillers and portable milk warmers. It shares no commonalities with Click Profit LLC and/or any of the other Defendants in the Complaint, aside from Emslie's ownership interest in both Express Ecom and Click Profit. Express Ecom and Click Profit have separate bank accounts, separate books, separate employees, different email addresses, separate credit cards and separate warehouses located in China. There is no overlap or commingling with the other Defendant companies, including Click Profit.

In fact, FTC Investigator Douglas McKenney established that Express Ecom LLC received $0.00 in profits of alleged ill-gotten gains from the purported scheme. [ECF No. 5-6, ¶¶ 44, 48]. It is clear, even based on the FTC's own admission, that Express Ecom LLC neither profited, received, nor participated in the purportedly deceptive scheme during the relevant three-year period. *See FTC v. Romero*, 658 F. Supp. 3d 1129, 1146-47 (M.D. Fla. Feb. 27, 2023) (finding that to prove that a defendant is "violating or about to violate" for the purposes of Section 13(b), the FTC must prove a cognizable danger of a recurrent violation through positive proof of the likelihood that the wrongdoing will recur); *FTC v. Vylah Tec LLC*, 328 F. Supp. 3d 1326, 1339 (M.D. Fla. 2018) (to obtain an asset freeze against a particular defendant, FTC must demonstrate that defendant actually gained something and was enriched by the unlawful practices alleged in the complaint).

Therefore, Express Ecom LLC and Emslie request that Express Ecom be released from the constraints of the TRO, including the asset freeze. In that regard, Emslie and Express Ecom specifically request that this Court modify the TRO to unfreeze the Mercury Bank account (ending in 3788) and credit card associated with Express Ecom LLC.

## IV. REQUESTED RELIEF

**WHEREFORE**, Defendants Craig Emslie and Patrick McGeoghean respectfully request that this Court enter an Order modifying the TRO to (i) provide Craig Emslie with $5,000 per month for three months for necessary living expenses, (ii) provide Patrick McGeoghean with $7,000 for the first month and $6,500 for the following two months for living expenses, (iii) pay Defendants' attorneys' fees and costs in the amount of $200,000 from Defendants' frozen assets for representing them and their respective corporate entities in this action, (iv) permit Craig Emslie, Patrick McGeoghean, and undersigned counsel to obtain read-only access to operational software and emails in order to prepare their defense, (v) permit Craig Emslie to operate Express Ecom LLC, including unfreezing the associated Mercury Bank account and associated credit card and (vi) grant any further relief that this Court deems just and proper.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel certifies that they conferred with Plaintiff, the FTC, in a good faith effort to resolve the issues raised in the Motion, and the FTC partially agrees to the relief requested herein as set forth.

Dated: March 21, 2025

        Respectfully submitted,

        **AKERMAN LLP**

        */s/ Jacqueline Arango*
        Jacqueline Arango
        Florida Bar No. 664162
        Ayman Rizkalla
        Florida Bar No. 65487
        Jennifer Cohen Glasser
        Florida Bar No. 123145
        Three Brickell City Centre
        98 Southeast Seventh Street
        Miami, Florida 33131
        Telephone: (305)-374-5600

Facsimile: (305)-374-5095

*Counsel for Defendants Craig Emslie, Patrick McGeoghean, Click Profit, LLC, SA Automation Enterprise LLC, M23 Holdings, LLC, M7 Investments LLC, and Express Ecom LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on this March 21, 2025, by the Notice of Electronic Filing, and was electronically filed with the Court via the CM/ECF system, which generates a notice of filing to all counsel of record.

*/s/ Jacqueline Arango*

9

80624731;1